DENNIS A. BLAKESLEE ET AL. *vs.* THE BOARD OF WATER COMMISSIONERS OF THE CITY OF HARTFORD.

First Judicial District, Hartford, May Term, 1927.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

A demurrer addressed to the substance of a complaint must fail if any facts provable under its allegations would support the cause of action relied upon.

A promise made to induce the performance of that which the promisee is already under a contractual obligation to do, is without consideration, where it involves no appreciable benefit to the promisor or detriment to the promisee, as in the case of a promise to pay a debt which is already owing and immediately due, or of a mere agreement to accept a part of a debt in satisfaction of the whole. But when substantial and unforeseen difficulties arise in the way of performing the original contract and the promisor, being faced with the loss of his bargain, induces the promisee, by means of the new promise, to carry out his obligations rather than to adopt the alternative course of abandoning them and responding to the promisor in damages, it is supported by consideration, provided it is fair and equitable under all the circumstances and is not the result of extortion or coercion on the part of the promisee.

The first count of the complaint in the present case alleged that after the plaintiffs had commenced the construction of a dam for the defendant board of water commissioners, under an agreement executed in 1915, the conditions resulting from the World War, and the subsequent participation of this country in it, rendered impossible performance of the contract either within the time limited or at the prices specified; and that, upon being notified of this situation and of the plaintiffs' intention to discontinue the work, the defendant agreed that,

if the plaintiffs carried out their obligations under the contract, it would extend the time for completion, waive the penalties provided for delay, and change the compensation so as to prevent any actual loss to the plaintiffs, provided legislation enabling it to do so could be secured; and that, although such legislation had been enacted and the dam completed according to specifications, the defendant had refused to pay the plaintiffs the actual cost of the work above the contract price. Upon demurrer to the complaint, it was *held:*

1. That the averment concerning the making of a new agreement might be regarded as a mere conclusion from the preceding allegations, or as an independent statement which would support the admission of evidence to substantiate it in fact.

2. That the passage of the enabling legislation was a condition precedent to the defendant's obligation under the new promise.

3. That if the effect of the new promise, as alleged in one portion of the complaint, was to prevent actual loss to the plaintiffs, it was, under the circumstances set forth therein, supported by consideration.

4. That if, as alleged in another portion of the complaint, a new contract was entered into, whereby the defendant was bound to pay, and the plaintiffs to accept, the actual cost of the work, it was clearly valid, since it involved the surrender on the part of the plaintiffs of their right to the price fixed in the original contract which might, through unforeseen circumstances, have exceeded the actual cost.

5. That the new promise did not violate the 24th Amendment to the Constitution of this State, which forbids the General Assembly or any municipality, or agency thereof, to increase the compensation of a public contractor above the amount specified in the contract, since that provision was directed against the giving of mere gratuities, and not against valid and proper alterations, upon good and substantial consideration, of the terms of existing contracts during their performance.

6. That Chapter 187 of the Public Acts of 1919, authorizing municipal corporations to alter or modify the terms of any public contract affected by the emergency conditions of the World War to the extent of providing relief to the contractor against actual loss sustained in the performance of his obligations, did not contravene the 24th Amendment, when read, as every Act should be, in the light of, and in harmony with, the constitutional restriction.

7. That the second count of the complaint, alleging that by reason of the various patriotic measures adopted by the State, the city of Hartford and the defendant, to assist in the prosecution of the war, the plaintiffs were "knowingly and wilfully

impeded, hindered and delayed" in carrying on their work, was demurrable, since the effect, if any, which the acts alleged might have had upon the plaintiffs was too remote and indirect to be cognizable in law.

Argued May 4th—decided October 3d, 1927.

ACTION to recover extra compensation for services rendered and materials furnished by the plaintiffs in the construction of a dam under a contract with the defendant, brought to the Superior Court in Hartford County where the defendant's demurrer to the complaint was sustained (*Nickerson, J.*) and, upon the refusal of the plaintiffs to plead further, judgment was rendered (*Marvin, J.*) for the defendant, from which the plaintiffs appealed. *Error and cause remanded.*

*Samuel C. Morehouse,* with whom, on the brief, was *Ralph H. Clark,* for the appellants (plaintiffs).

*Allan K. Smith,* with whom, on the brief, was *Edward M. Day,* for the appellee (defendant).

MALTBIE, J. This action comes before us upon a demurrer to the complaint. The first count of the complaint states the following facts: On August 23d, 1915, the plaintiffs entered into a contract with the defendant for the construction of a large dam, the price therefor being fixed in the contract at certain named sums for the various items of work to be performed. The contract provided that the work was to be completed in thirty-three months and, unless this was done, the plaintiffs were to pay the defendant as liquidated damages $100 for each day thereafter required. Both parties understood when the contract was made that the plaintiffs had to move a great amount of earth and rock, necessitating the use, in large quantities, of high explosives, of coal for the operation of steam shovels and other apparatus, of lumber, cement, iron, and

steel, and vitrified pipe, and of small tools and equipment; and that the plaintiffs had to employ a great number of skilled and unskilled laborers. The parties did not contemplate that this country was to become involved in the war then raging in Europe.

The complaint then proceeds to allege, in considerable detail, these further facts: Early in 1916, rumors became prevalent that this country might become embroiled in the war. Thereafter steps taken in this country in preparation for its becoming a participant therein, and in the conduct of it after war was declared, resulted in the practical impossibility of the plaintiffs procuring the laborers necessary to carry on the work under the contract, in embargoes upon the transportation of materials and supplies, in the diversion of materials and supplies for the use of the government, and in interference with the progress of the work. As a result of these conditions "the contract became impossible of performance according to its terms." Thereupon the plaintiffs and the defendant discussed the situation, and the plaintiffs notified the defendant that because of the conditions confronting them due to the war, "it would be impossible for the plaintiffs to continue performance of said work at the prices specified in said contract." The defendant then stated that it recognized the conditions, and that the dam under construction was for the purpose of forming a compensating reservoir from which to supply water it was under contract to furnish to various milling concerns then engaged in the production of war materials.

It is then alleged (par. 8): "Said defendant then and there agreed to and with the plaintiffs that if the plaintiffs would proceed with the work called for under said contract, it, the defendant, would waive the penalty provided for in said contract on account of

its non-completion within the thirty-three months' period specified in said contract and that it would extend the time necessary for the completion of said work. The defendant informed the plaintiffs that under legislation as it then existed defendant was powerless to change the compensation provided for in said contract but defendant then and there promised and agreed to and with the plaintiffs, if legislation could be effected permitting defendant to change the compensation called for under said contract, defendant would do all in its power to so change the compensation called for under said contract as to prevent the plaintiffs from suffering any actual loss which might be occasioned through its performance. The plaintiffs, relying upon the promise and assurance of defendant to waive the penalty provided for in said contract and extend the time of its completion and relying upon the promise and assurances of defendant that, if legislation could be effected permitting it so to do, the defendant would do all in its power to alter the compensation called for under said contract so as to prevent the plaintiffs from suffering any actual loss in its completion, continued to perform the work and furnish the material and supplies called for under said contract and prosecuted said work expeditiously until the entire work called for under said contract had been completed. In view of the impossibility of performing the contract according to its terms, the new agreement mentioned in this paragraph was made between the plaintiffs and the defendant. (par. 9.)   The said contract theretofore existing between the plaintiffs and defendant, was rescinded by waiving of the penalties already incurred, and also was rescinded in so far as the time limit under which the work was to be performed and the compensation to be paid therefor, were concerned by changing the effect of the last payment as a release as stated in

Article XXVI of the contract, and a new contract entered into whereby the time limit was to be extended and the compensation to be paid the contractor was to be the actual cost of the work, labor and material to be furnished by the plaintiffs if legislation could be effected permitting defendant to alter the compensation so as to permit it to pay the actual cost."

The complaint then goes on to allege that the plaintiffs caused a bill to be presented in the General Assembly authorizing municipal corporations, boards and departments thereof, to change the terms of contracts, the cost of performance of which had been increased by war interference, so as to make the compensation therefor sufficient to prevent the contractor from suffering any actual loss due to performance of his contract, and that thereafter this bill was duly passed and approved by the Governor. The complaint then continues with an allegation that the plaintiffs have fully completed the contract and have presented to the defendant a bill for $159,000, representing the actual cost of the work above the amount paid to them under the terms of the contract, and that the defendant has refused to pay it.

The defendant demurred to this count of the complaint upon five grounds, which may be briefly summarized as follows: (1) It does not appear that the contract originally made by the parties has ever been rescinded or modified in so far as the compensation to be paid the plaintiffs is concerned; (2) it does not appear that there was any consideration for any alleged agreement to increase the compensation provided by the original contract, and it does appear that the plaintiffs performed no services or furnished no material except those required under that contract; (3) it appears that when the contract was made war was already being waged in Europe and the possibility of

this country becoming involved then existed, that the contract had no provision for such a contingency, and that it was not impossible of performance; (4) the defendant as an agent of the city of Hartford could not lawfully, under the 24th Amendment of the Constitution of this State, increase the compensation agreed to be paid the plaintiffs beyond that specified in the contract; (5) the Act of the General Assembly referred to in the complaint did not permit the defendant to change the compensation of the plaintiffs provided in that contract.

With reference to the first ground of demurrer, while the allegations of the complaint are somewhat equivocal, still the plaintiffs might clearly offer evidence under them which would establish an agreement between the parties for a modification of the contract. In the eighth paragraph it is alleged that the defendant promised and agreed to and with the plaintiffs, that "if legislation could be effected permitting defendant to change the compensation called for under said contract, defendant would do all in its power to so change the compensation called for under said contract as to prevent the plaintiffs from suffering any actual loss which might be occasioned by its performance," and that, relying on this promise and assurance, the plaintiffs continued in the performance of the contract until the work was completed. Inasmuch as it is not claimed that there was any want of power in the defendant to change the contract save lack of enabling legislation, its agreement was in effect one to pay the additional compensation should such legislation become effective. Moreover, the next paragraph of the complaint expressly alleges that a new contract was actually entered into by the parties, by which "the time limit was to be extended and the compensation to be paid the contractor was to be the actual cost

of the work, labor and material to be furnished by the plaintiffs, if legislation could be effected permitting the defendant to alter the compensation so as to permit it to pay the actual cost." While this allegation is capable of construction as a mere conclusion from the allegations of the eighth paragraph, that is not necessarily so; the preceding allegations may be regarded as mere matters of inducement; *Hull* v. *Thoms,* 82 Conn. 647, 649, 74 Atl. 945; and evidence might be offered which would substantiate in fact its allegations of the making of a new contract. The demurrer being addressed to the substance of the complaint, if any facts which are provable under its allegations would support the cause of action relied upon, the demurrer would of necessity fail. *O'Donnell* v. *Sargent & Co.,* 69 Conn. 476, 483; 38 Atl. 216; *Wildman* v. *Wildman,* 72 Conn. 262, 270, 44 Atl. 224; *Mathews* v. *Converse,* 83 Conn. 511, 515, 77 Atl. 691. The agreement to change the compensation, unless otherwise invalidated, would become enforceable upon the passage of a sufficient enabling Act. The passage of such an Act would be a condition precedent to the defendant's obligation, but the condition being satisfied, that obligation would become fixed. *McIsaac* v. *Hale,* 104 Conn. 374, 379, 132 Atl. 916; *Hartford-Connecticut Trust Co.* v. *Cambell,* 95 Conn. 399, 407, 111 Atl. 864; *Yanish* v. *J. Neils Lumber Co.,* 101 Minn. 78, 111 N. W. 921. This ground of demurrer cannot be sustained.

The second and third grounds of demurrer may be considered together. They raise the question which has been much discussed by legal scholars, whether a promise to pay additional compensation for the continued performance of work which the promisee is already obligated to the promisor to do by the terms of an existing contract, is supported by a sufficient consideration. Three of our own decisions bear directly

upon the issue. In *Connelly* v. *Devoe,* 37 Conn. 570, it was held that there was a good consideration for an agreement by the promisor to extend the time of performance fixed by the terms of the contract, though the contract was otherwise unchanged. That decision rested in part upon the theory that there was, by the agreement for the extension of time, an abandonment of the original contract and the substitution of a new one. While the decision was correct, as we shall show, in the light of subsequent criticisms we cannot now hold that theory to be sound. See 1 Williston on Contracts, § 130a. In *Sasso* v. *K. G. & G. Realty & Construction Co.,* 98 Conn. 571, 120 Atl. 158, we quoted the broad rule of law held in Massachusetts and a few other jurisdictions to the effect that, if a plaintiff having entered into a contract to do certain work refuses to proceed with it and the defendant, to secure the continued performance of the work rather than to resort to its right to collect damages, promises additional compensation, the promise is valid and enforceable. These references must, however, be read in the light of the actual facts which were before the court and which are thus summarized in the opinion (p. 575): "What actually happened was, that under the circumstances set forth above the plaintiff was, without fault on his part in a position where he could not carry out his contract with the quality of tile contracted for. The defendant was confronted with an approaching breach of contract by the plaintiff. Instead of awaiting such breach and relying on an action upon the breach, it preferred to contract with the plaintiff to complete the contract with inferior tile costing more money than the plaintiff figured that the better tile would cost him when he made up his contract price. This constitutes a rescission or abandonment of the original contract and the making of a new contract which is based on a valid

consideration, namely, the mutual promises there made by the parties." The case is thus seen to fall within that class tersely summarized by us in *Simone* v. *Kirschner*, 100 Conn. 427, 429, 124 Atl. 20: "Such an agreement for extension of time for payment, since it involves a promise by the holder to forbear, must be supported by a consideration, but there is such a consideration if the debtor does, or promises to do, something further or different from that which he is bound to do." See also 1 Williston on Contracts, § 131b. In *Gruber* v. *Klein*, 102 Conn. 34, 127 Atl. 907, the facts were that the maker of a note secured the indorsement of it by one to whom he was indebted upon a promise to pay the debt from the proceeds of its negotiation, and we had before us a case where the bald situation was presented "of a promise to do what one' was already obligated to do." We there said: "Moreover, the only consideration for his indorsement was the promise of Friedman that he would pay Klein a debt which he owed him from the proceeds of the negotiation of a note made by him and indorsed by Klein. The promise to pay one's debt cannot be regarded as consideration to him for his indorsement of a note made by the debtor who promises the indorser to pay his debt with the proceeds of the negotiation of the note. If he obtains the proceeds of the note, he would obtain only what was already owing him, and a promise to pay a valid debt cannot be held to be the giving of value for the indorsement." We also there quoted from *Morris County Brick Co.* v. *Austin*, 79 N. J. L. 273, 275, 75 Atl. 550, where the court, in a similar situation, said: "Nor can the promise to pay the commission out of the proceeds of the note, as distinct from the actual payment, constitute value for the indorsement, for that promise was merely one to perform an existing legal obligation, and was therefore with-

out consideration." For the purposes of that case, at least, we adopted the rule supported by the great weight of authority, that a promise to do that which one is already bound by his contract to do is not a sufficient consideration to support an additional promise by the other party to the contract. 1 Williston on Contracts, § 130.

The basis of the rule is generally made to rest upon the proposition that in such a situation he who promises the additional compensation receives nothing more than that to which he is already entitled and he to whom the promise is made gives nothing that he was not already under legal obligation to give. 1 Willison on Contracts, § 130. Where the promisee has abandoned or is about to abandon his undertaking, there is often in such a situation a substantial benefit in fact conferred upon the promisor in securing the continued performance of the contract, and an actual detriment to the promisee in proceeding with an undertaking which he has resolved to be too onerous. Corbin, 17 Yale Law Journal, 472. This fact we noted in *Connelly* v. *Devoe*, 37 Conn. 570, 576, where we said: "And further, it was for the interest of the defendant that the work should be completed. He had doubtless made a good contract. Should the work stop where it was he would lose the benefit of it. The injury he had experienced by the delay was simply the loss of the benefit of his well for a few days. It was now absolutely certain that that benefit could not be experienced for some time to come, whoever might do the work. The plaintiff would do it as quickly as anyone. By so doing the defendant would reap the fruits of the contract. Surely it was for his interest to make the agreement." The basis of the rule holding such an agreement for additional compensation to be invalid must be, not that there is no consideration in fact,

but that, to use Street's expression, the consideration is deemed by the law to be "incompetent." 2 Street, Foundations of Legal Liability, 74. It is no doubt inaccurate to say that the promisee has the right to elect to pay those damages for which the law would make him liable if he did not perform, rather than to proceed with the performance of the contract, for the promisor bargained for that performance, not for that one of these two alternatives which the promisee might choose. 1 Williston on Contracts, § 130a; Corbin, 17 Yale Law Journal, 471; and see *Stierle* v. *Rayner,* 92 Conn. 180, 186, 102 Atl. 581. But it is true that, except in a small class of cases, the law would not enforce performance of the contract, and again the promisee has in fact an election. The right that the promisor of the additional compensation has to exact performance as the sole obligation of him to whom the promise is made, is not one behind which the law puts the sanction of its compelling force. It lacks one of the essentials of a legal right. "If, for the benefit of A, society commands certain conduct or performance on the part of B, and will take some action detrimental to B in case of disobedience, we say that A has a right and B has a duty." Corbin, 28 Yale Law Journal, 741.

If the contractor has no right to elect to pay damages, it is not because the law will attempt to hold him to performance, but because it is not right, that is, morally justifiable that, lacking legal excuse, he should fail to keep his contract. "The reason why the doing what a man is already bound to do is no consideration, is, not only because such a consideration is in judgment of law of no value, but because a man can hardly be allowed to say that the prior legal obligation was not his determining motive." Byles, J., in *Shadwell* v. *Shadwell,* 9 C. B. (N. S.) 159, 178, 30 L. J., C. P., 145. But if the contractor cannot be allowed to say that

the prior legal obligation was not his determining motive, by the same token of honesty and good faith, how can the promisor of the additional compensation, who by the offered inducement of that compensation has caused the contractor to do to his detriment that which he had resolved not to do, be heard to say that he will not keep his promise. Judged from the standpoint of ordinary business morality, the situation of the promisor may well be less defensible than that of the contractor. See Corbin, 17 Yale Law Journal, 472. This aspect of the situation we noted in *Connelly* v. *Devoe, supra:* "And besides, the defendant suffered the plaintiff to go on with the work after the agreement was made, under the expectation of being allowed the extended time for the completion of the work." Of a somewhat similar situation, the Supreme Court of Washington said, in *Brown* v. *Kern,* 21 Wash. 211, 214, 57 Pac. 798: "It is certainly not in accordance with ethics, and ought not to be in accord with the rules of law, to allow a creditor to enter into a contract to compromise his debt or judgment, and by reason of that compromise receive an amount of money which he could not have received except through the medium of a compromise, and then allow him to violate his contract on the plea of want of consideration and still retain the fruits of the agreement which he made to compromise."

The rule which holds that a promise of additional compensation is without consideration if the promisee does or promises to do only that which he is already under a contract obligation to do, cannot be satisfactorily rested upon the ground that the promisee has suffered no detriment and the promisor received no benefit, nor upon the ground that the promisee has no right to take any other course than to perform. In fact, no satisfactory solution of the problem can be

reached upon the basis of denying that there can be under any circumstances consideration for a promise of additional compensation in such a case, but the circumstances of the particular case, or at least of the class of cases, under consideration must be considered. Ballantine, 11 Michigan Law Review, 433; Corbin, 17 Yale Law Journal, 472. It may well be that there is in fact no appreciable detriment to the promisee or benefit to the promisor in many cases where a promise is made to induce the performance of that which the promisee is already under a contract obligation to do; such would be the ordinary case of a promise to pay a debt which is already owing and immediately due; 1 Williston on Contracts, § 120; or a mere agreement to accept a part of a debt in satisfaction of the whole. *State ex rel. McClure* v. *Northrop*, 93 Conn. 558, 566, 106 Atl. 504. So, too, considerations oɪ public policy may enter into the situation; Beale, 17 Harvard Law Review, 77; Ballantine, 11 Michigan Law Review, 433; Corbin, 27 Yale Law Journal, 373; and it may well be that broadly to admit the power of a contractor to exact additional compensation by refusing to continue performance would afford too many opportunities for exactions approaching very near to extortion. *Lingenfelder* v. *Wainwright Brewing Co.*, 103 Mo. 578, 593, 15 S. W. 844; *Michaud* v. *MacGregor*, 61 Minn. 198, 201, 63 N. W. 479. Here the way is open for a distinction which commends itself at once to good sense and good morals. Where the contractor can justify his refusal to proceed with the contract by showing that he is confronted with circumstances not contemplated when the contract was made which render its performance impossible or unduly onerous, and the promisor, being informed of the situation, induces him by a promise of additional compensation to proceed with it, the contractor's right to that compensation ought justly

to be recognized. "However, where a contract must be performed under burdensome conditions not anticipated, and not within the contemplation of the parties at the time when the contract was made, ·and the promisee measures up to the right standard of honesty and fair dealing, and agrees, in view of the changed conditions, to pay what is then reasonable, just, and fair, such new contract is not without consideration within the meaning of that term, either in law or in equity." *United Steel Co.* v. *Casey,* 262 Fed. 889, 893; see also *Linz* v. *Shuck,* 106 Md. 220, 67 Atl. 286; *King* v. *Duluth, Missabe & Northern Ry. Co.,* 61 Minn. 482, 488, 63 N. W. 1105. Of such a situation, involving a contract to deliver ice, Cooley, J., said, in *Goebel* v. *Linn,* 47 Mich. 489, 493, 11 N. W. 284: "Unexpected and extraordinary circumstances had rendered the contract worthless; and they must either make a new arrangement, or, in insisting on holding the ice company to the existing contract, they would ruin the ice company and thereby at the same time ruin themselves. It would be very strange if, under such a condition of things the existing contract, which unexpected events had rendered of no value, could stand in the way of a new arrangement, and constitute a bar to any new contract which would provide for a price that would enable both parties to save their interests." Within this class of cases falls our own case of *Connelly* v. *Devoe, supra;* there the contract was that the plaintiff would dig a well to such a depth that there would be three feet of water in it after it was stoned, and of a diameter of three feet, the work to be done within, a limited time. The plaintiff met with unexpected difficulties in the caving in of the sides, the sand near the bottom proving to be unusually bad for the purpose of well digging, and this necessitated shoring and special equipment. The plaintiff's inability to perform the contract

within the time set was thus due to circumstances not within the contemplation of the parties when the contract was made, and the circumstances were such as to bring the case within the principle we have been discussing.

Of the test to be applied in such a situation the Supreme Court of Minnesota said in *King* v. *Duluth, Missabe & Northern Ry. Co., supra* (p. 488): "What unforeseen difficulties and burdens will make a party's refusal to go forward with his contract equitable, so as to take the case out of the general rule and bring it within the exception, must depend upon the facts of each particular case. They must be substantial, unforeseen, and not within the contemplation of the parties when the contract was made. They need not be such as would legally justify the party in his refusal to perform his contract, unless promised extra pay, or to justify a court of equity in relieving him from the contract; for they are sufficient if they are of such a character as to render the party's demand for extra pay manifestly fair, so as to rebut all inference that he is seeking to be relieved from an unsatisfactory contract, or to take advantage of the necessities of the opposite party to coerce from him a promise for further compensation. Inadequacy of the contract price which is the result of an error of judgment, and not of some excusable mistake of fact, is not sufficient."

Under the allegations of the complaint the plaintiffs may be able to prove such a situation as would bring them within the scope of this principle. There is, however, a narrower ground upon which the facts which they may be able to prove under that complaint may justify the court in holding the promise for additional compensation to be upon a sufficient consideration. It will be noticed that while in the eighth paragraph the promise of the defendant there recited is that it would

do all in its power to change the compensation so as
to prevent the plaintiffs from suffering actual loss
through performance of the contract, in the ninth para-
graph the allegation is that a new contract was entered
into whereby the compensation to be paid the plain-
tiffs was to be the actual cost of the work, labor and
material to be furnished by them. Any difficulties due
to the somewhat contradictory nature of these allega-
tions are not before us upon this demurrer, and all we
have to ask is, under them could the plaintiffs prove
such a situation as would entitle them to recover? If
they succeed in proving a new contract such as they
allege in the ninth paragraph of the complaint, we would
have a situation where there could be no doubt of its
validity, for as there alleged, the plaintiffs clearly sur-
rendered any rights they might have to recover the con-
tract price and agreed to accept the actual cost of the
work, labor and material to be furnished. Of course
they were abundantly satisfied that that cost would
exceed the contract price, but if, through some unfor-
seen circumstances, the actual cost had fallen below the
contract price, under this allegation of their complaint
they would have been bound to accept the lesser sum.
There would, in such a situation, be a clear surrender of
rights on the part of the plaintiffs which would amply
meet the requirements of a good consideration. *Monroe
v. Perkins,* 26 Mass. (9 Pick.) 298; Beale, 17 Harvard
Law Review, 79.

The fourth ground of demurrer to the first count is
that the agreement for additional compensation con-
travenes the 24th Amendment of the Constitution of
this State which, so far as it is applicable here, provides
that neither the General Assembly nor any county,
city, borough, town, or school district, shall increase the
pay or compensation of any public contractor above
the amount specified in the contract. We have never

had occasion to apply this constitutional provision in a case where the State, or one of its municipal agencies, has agreed to pay compensation in addition to that provided in a contract for public work, but we have indicated its meaning and effect as applied to such a situation in clear terms. "The purpose of the provision, applicable alike to all, is to make it legally impossible for any one of them to receive a greater sum, either by payment or gift, for performing the duties pertaining to his office, or for fulfilling the terms of his contract for furnishing materials, or for personal service, than it would have been legally possible for him to obtain by the judgment of a court upon the terms of his contract as originally made." *Garvie* v. *Hartford,* 54 Conn. 440, 443, 7 Atl. 723. "In view of all the considerations advanced by counsel and those suggested in . . . a thorough study of the subject, we think that Article Twenty-Four is a plain mandate addressed to the public bodies named, including the General Assembly, forbidding each to exercise the power it may have as such public body to use the public money under its control for the payment to any public officer, employee, or contractor, in any form or by any device, of any compensation in excess of that established by legislation or by contract." *McGovern* v. *Mitchell,* 78 Conn. 536, 569, 63 Atl. 433. "It has thus been definitely and authoritatively determined that the prohibition of the Amendment exhausts itself in forbidding the payment or grant by the public bodies named therein of gratuities or extra compensation defined to be 'compensation . . . in addition to, in excess of, or larger than, the compensation prescribed by law or settled by contract,' and does not forbid the establishment in the regularly ordained manner of compensation for future services at a larger sum than that al-

ready established." *State ex rel. Marsh* v. *Lum,* 95 Conn. 199, 205, 111 Atl. 190.

The prohibition of the Constitution is aimed at the giving of gratuities, the making of payments to public officers or contractors beyond that to which they are entitled by law or the provisions of a valid contract. Where a contract has been completely performed it may well be that it would not be within the power of the State or any of the municipalities described in the Amendment to vote to the contractor further compensation than that fixed in his contract. But the Amendment cannot be construed as intended to prohibit valid and proper alterations, upon good and substantial consideration, of the terms of existing contracts during their performance whether those alterations are in the work to be performed or the compensation to be paid. In *United States* v. *Cook,* 257 U. S. 523, 42 Sup. Ct. 200, the court had before it a somewhat similar situation. A contractor for the construction of a custom house at San Francisco had been delayed in the work and been subjected to greatly increased costs by reason of the earthquake and the fire which followed it. Congress thereupon passed an Act authorizing the Secretary of the Treasury to pay the contractor, in addition to the contract price, such sum as might be equitable and just to reimburse him for any loss actually sustained in consequence of the earthquake and fire, provided the amount should not be sufficient to enable him to make any profit. The court, speaking by Taft, C. J., says: "The Government contends that the amount awarded to the contractor under the act was a mere gratuity and cannot be properly treated as a part of the cost of construction. We cannot agree to this view. It seems to us that this was an alteration of the contract in response to equitable considerations. It was a change from unit prices to a cost plus nothing contract. It

was not a mere lump sum gift. It was the result of inspection and examination as directed by Congress, and an award by actual estimates. It was the result of a change in the contract terms made by the principal in whose name and for whose benefit it was entered into, and acquiesced in by the contractor. . . . The additional sum was part of the net amount of the contracts awarded, as they were legally modified by the agreement of the parties embodied in the clause of the congressional act."

We recognize fully the force of what was said by Cardozo, J., in *McGovern v. New York,* 234 N. Y. 377, 390, 138 N. E. 26: "We are dealing here with a restraint imposed by the Constitution itself upon the agencies of government. Its prohibitions are to be interpreted, not narrowly and grudgingly like those of a penal statute (*M'Culloch v. Maryland,* 4 Wheat. [17 U. S.] 316, 4 L. Ed. 579; *Prigg* v. *Pennsylvania,* 16 Pet. [41 U. S.] 538, 612, 10 L. Ed. 1060, 1088), but broadly and liberally to promote the policy behind them. A payment to a contractor does not cease to be extra compensation because some fragment of consideration, sufficient, it may be, to sustain a contract between private parties, may give to the transaction the aspect of an exchange of values. The underlying realities of plan and purpose and effect must prevail over the form or the disguise which may incumber or belie them. Approached in this spirit, the argument for the plaintiffs is seen to be beside the point. The argument is that courts do not weigh the adequacy of the consideration in determining whether an agreement has the obligation of a contract. Enough that a right has been renounced. The renunciation supports the concession of anything, no matter how large, that is offered in return. That may be true if the existence of a contract is the only question to be determined. What concerns us

here is not whether a contract exists, but whether in substance and operation it is one for extra compensation, a largess in purpose and effect though in name and in form a payment for money's worth." But we have already stated that, in such a situation as is alleged in the complaint, there may be shown to be good consideration for the defendant's promise, even though as a result of it the plaintiffs did no more than they were already bound by their contract to do. Examining these allegations and viewing the situation in the light of actualities, it at once becomes apparent that that consideration may be shown to be very much more than "some fragment of consideration, sufficient, it may be, to sustain a contract between private parties." From the standpoint of detriment to the plaintiffs, their continued performance of the contract is alleged to have cost them $159,000 more than the contract price for the work, and this they must lose, if they are not to prevail in this action. From the standpoint of benefit to the defendant, it may well appear that, had the plaintiffs not proceeded to perform, there would have been long delays in the completion of the work, the probability that it would be obliged to pay large sums to the manufacturing concerns for the meeting of whose needs the dam was being constructed, and, very likely, tedious and long-drawn-out litigation in the determination and collection of such damages as it would be entitled to recover for the plaintiffs' breach of their contract. The agreement to change the compensation, if these facts are proved, will be shown to be far more than one merely "for extra compensation, a largess in purpose and effect though . . . in form a payment for money's worth."

The final ground of demurrer to the first count is that the Act of 1919 did not authorize the change in the agreement alleged in the complaint. The only

contention of the defendant in support of this ground is that the Act is unconstitutional as contravening the 24th Amendment to the Constitution. This Act, Chapter 187 of the Public Acts of 1919, provides that, for the purpose of preventing, settling and adjusting claims by contractors on such contracts as are described in it, due to the emergency conditions created by the World War, and for the prevention of litigation concerning such claims and contracts, and to procure the expeditious completion of the same, the various municipal agencies specified in the Act, in such terms as to include the defendant, which, prior to April 6th, 1917, had contracted in the name of the municipality or agency for the construction of any public work, might alter or modify the terms of such contract to the extent of providing relief to the contractor for any loss in the performance thereof due to conditions created by the World War, provided any portion of the work was to be performed subsequent to April 6th, 1917; and further provided that such alterations and modifications should be only for the purpose of relieving the contractor from penalties for delay and of recompensing him for any loss sustained by reason of war conditions, but should not permit him to realize any profit on the contract. While the terms of this Act are sufficiently broad so that, taken by themselves, they might include agreements to pay extra compensation which would be obnoxious to the provisions of the 24th Amendment, we are to presume that the General Assembly intended a valid and not an invalid enactment, and to effectuate that intent we may and should read the Act in connection with the provision of the Constitution we have been discussing. *State* v. *McKee*, 73 Conn. 18, 24, 46 Atl. 409; *West Hartford* v. *Coleman*, 88 Conn. 78, 80, 89 Atl. 1120; *Connecticut Light & Power Co.* v. *Southbury*, 95 Conn. 242, 247, 111 Atl. 363. So read, the

meaning and intent of the Act must be taken to be that the various municipal agencies described in it are authorized to make such alterations or modifications as are included within its terms and as are valid under the provisions of the 24th Amendment of the Constitution of this State as we have construed them in this opinion. So understood, the Act is not obnoxious to the provisions of that Amendment and is valid.

A second count is inserted in the complaint. This recites the declaration of war by this country; various steps taken by this State to assist in furthering its conduct; several resolutions adopted by the city of Hartford, of which the defendant is a branch, to the same end; action on its part encouraging and assisting in procuring enlistments, in carrying on the selective draft, and enforcing embargoes; and increases in the pay of its own employees. It then states as its conclusion that "by reason of all the facts set forth, the defendant knowingly and willfully impeded, hindered, delayed and obstructed the plaintiffs in the performance of their contract with the defendant, and knowingly and wilfully increased the cost of performance of said contract by the plaintiffs," thereby causing the cost of completing the work to exceed the amount paid under the contract by the sum of $159,000, the recovery of which is demanded. The defendant demurs to this count because it does not appear that the acts set forth in certain paragraphs were sufficient to sustain this conclusion. While the demurrer would have been better drawn had it included all the paragraphs in the complaint preceding the one stating the conclusion, the omitted paragraphs contain nothing of consequence to support it and may be disregarded. There is nothing in the facts recited in this count to show any such conduct on the part of the defendant as bore so directly or immediately upon the performance of their

contract by the plaintiffs as to justify in any way the claim made. The acts alleged were clearly inspired by the most laudable purpose of assisting the government in its time of need and were not intended in any way to affect the plaintiffs' contract. Any effect they might have upon its performance would be too remote a consequence to be cognizable in law. *Fiarenzo* v. *Richards & Co.*, 93 Conn. 581, 586, 107 Atl. 563.

The demurrer to the first count should have been overruled. The demurrer to the second count was properly sustained.

There is error, the judgment is set aside and the cause remanded to be proceeded with according to law.

In this opinion the other judges concurred.