Stanley KIZIOR, Cecil Norris, Franklin
Norris, and John Addington,
Respondents,

v.

CITY OF ST. JOSEPH, Missouri, Defendant,
St. Joseph Sanitation System, Inc., a Mis-
souri Corporation, Appellant.

No. 47311.

Supreme Court of Missouri,

Division No. 1.

Nov. 9, 1959.

Motion for Rehearing or to Transfer to
Court en Banc Denied Dec. 14, 1959.

Louis Kranitz, Theodore M. Kranitz, St. Joseph, for appellant.

W. Brady Duncan, St. Joseph, for respondents.

HOLMAN, Commissioner.

Plaintiffs, as legal voters and taxpayers of the City of St. Joseph, Missouri, instituted this action in which they sought "a declaratory judgment and decree that Special Ordinance 14500 and the Agreement to Amend Contract for Collection and Disposal of Garbage are illegal, unconstitutional and void, and of no force and effect, * * * and that all of the defendants be permanently enjoined from any further actions or proceedings thereunder." The defendants were St. Joseph Sanitation System, Inc., The City of St. Joseph, Missouri, certain officials of said city, and John M. Dalton, Attorney General of Missouri. Prior to trial the cause was dismissed as to the attorney general. A trial resulted in a judgment which granted the relief sought by plaintiffs. The St. Joseph Sanitation System, Inc., has appealed from that judgment. The other defendants did not file a motion for new trial and have not appealed. We have appellate jurisdiction because the case involves the construction of Article III, Section 39 of the Constitution of this state, V.A.M.S. Article V, Section 3, Constitution of Missouri 1945.

Morris Milder was president of the St. Joseph Sanitation System, Inc. Except for qualifying shares, all of the stock of that corporation was owned by him and his wife. From the year 1929 until trial time, that corporation has held the exclusive garbage collection franchise for the City of St. Joseph. Until 1949 each producer of garbage paid the cost of the collection of same. However, on November 2, 1948, a special tax levy of 15¢ on the $100 valuation was voted for the purpose of providing a special fund from which to pay the expense of garbage collection in said city. Thereafter the City of St. Joseph entered into a contract, dated July 12, 1949, with the St. Joseph Sanitation System wherein it was agreed that for the period from August 1, 1949, to and including July 31, 1959, the company would collect garbage at stated intervals within the corporate limits of St. Joseph as then established and within the area of any extension of said corporate limits during the life of the contract. For that service the city agreed to pay the sum of $69,700 annually, payable on a basis of one-twelfth thereof each month. The appellant gave a bond in the sum of $25,000, conditioned upon the faithful performance of the contract.

At the time the foregoing contract was entered into, Mr. Milder and his wife owned a hog-feeding ranch located on a bank of the Missouri River which was called "B & M Farms." At that time, garbage was disposed of by feeding the same to hogs kept on the farm. Access to the farm was gained by crossing a bridge near the northwest city limits. The contract with the city provided that the garbage could be disposed of (1) by feeding the same to hogs, (2) by depositing same directly into the Missouri River, "subject,

however, to the laws, rules and regulations of the federal government and of the State of Missouri," and (3) by burying same in a sanitary fill constructed in keeping with the requirements of the city, county and state health authorities. As will later develop, it is significant that the contract specified that the compensation provided therein should be accepted as full payment for furnishing all materials and performing all work embraced therein, and for all loss or damage and all expenses arising from "any unforeseen difficulties or obstruction which might arise or be encountered during the prosecution of the work."

The parties operated under the aforementioned contract until it was amended in 1953 as hereinafter set out. On April 16, 1953, Mr. Milder sent a letter and memorandum to the mayor and council of the City of St. Joseph in which he stated that there was need for a substantial increase in the amount paid by the city to his company for garbage collection and disposal as his company was suffering substantial losses which could not continue indefinitely He pointed out that their hog-feeding plant had been damaged by flood conditions in June 1951, and that the flood of April 1952 had cut a new channel for the Missouri River which removed the possibility of direct access to the hog-feeding plant; that all trucks were required to cross the river into Doniphan County, Kansas, in order to reach the plant, which extended the distance to the farm from six to ten miles. He also pointed out that the State was in the process of enacting a law which would prohibit the feeding of raw garbage to hogs (see Laws of Missouri 1953, p. 6; pocket part 14 V.A.M.S., § 266.410 et seq.) and which would in all likelihood make any hog-feeding operation unprofitable. It was also suggested that the cost of repairs to equipment, gasoline and labor had increased approximately 11%. Mr. Milder concluded with a request that the existing contract be modified and that compensation be fixed on a basis of $1.17½ per capita per annum.

The city officials and the board of public health investigated Mr. Milder's request and conferred with him on a number of occasions. As a result of the negotiations, Ordinance No. 14500 was enacted which authorized the board of health to enter into the "Agreement to Amend Contract," the legality of which is the subject of the instant litigation. That agreement provided that "whereas, party of the first part finds it impossible at this time to carry out the terms of said contract and of the specifications and proposal made a part thereof, by reason of conditions beyond its control, * * * and whereas, the City of St. Joseph is nevertheless desirous of making it possible for the first party, as the exclusive contractor for the collection and disposal of garbage in said city, to continue said operation, and deems it to the best interest of said city to agree upon a new basis of contractual rights and obligations between the first party herein and said city. Now, therefore, in consideration of the agreement on the part of first party hereto to continue to collect and dispose of garbage in accordance with the contract hereinabove referred to and upon other good and valuable considerations mutually understood and agreed between the parties hereto, the parties hereto agree that said contract of July 12, 1949, and the documents hereinabove referred to which are attached thereto and made a part of said contract, shall be changed, altered and modified as follows * * *."

Of the six specifications wherein the contract was amended, four related to changes in regard to equipment and the manner of disposing of garbage, all of which appear to be for the benefit of the appellant. The other two amendments provide that in the event of any extension of the present city limits the appellant would be paid an additional amount upon a per capita basis for collecting the garbage in that area, and that the compensation of appellant for collecting the garbage throughout the city would be fixed on a basis of $1.13 per capita per annum, which, according to the

population as shown by the 1950 census would provide an annual compensation of $88,804 for appellant, or an annual increase of $19,104.44 over the amount provided in the original contract. It was specified in the "Agreement to Amend" that "this contract, together with said contract of July 12, 1949, shall be considered as one agreement between the parties and shall be read and considered together as if the same were one single document."

The parties operated under the amended agreement until the instant action was filed. For a time (until prohibited by the federal authorities) the appellant dumped its garbage into the Missouri River through the private sewer of the Stock Yards Company, for the use of which it paid $200 per month. Thereafter, the city purchased land for a sanitary land fill which is used by licensed trash haulers, and for some time prior to the trial appellant had been disposing of the garbage by dumping it in the city's land fill, for which privilege it paid the city $300 per month.

In the instant petition the plaintiffs also sought a temporary injunction pendente lite to prohibit payment of the increased compensation as provided in the "Agreement to Amend." No hearing was held, however, upon that issue as all parties agreed that, beginning October 1, 1957, payments of the additional compensation as provided in the amendment would be suspended during the pendency of this action.

Mr. Milder testified that "we were on the verge of bankruptcy" and were not able to continue on the basis of the amount payable under the original contract. The city officials were apparently convinced of the truth of those assertions and agreed to the increase in compensation because the city was not in a position financially to take over the collection of garbage. There is considerable evidence in the transcript concerning the financial condition of appellant prior to the amendment, but, under the view we take of the case, such evidence

was immaterial. However, we observe that appellant was able to pay Mr. Milder's salary of $7,500 a year and was not sustaining any appreciable loss. The losses occurred in the hog-feeding operation conducted by B & M Farms, particularly during the period when the price of hogs fell from 30¢ to 11¢ per pound. The evidence would justify the conclusion that if (as was subsequently done) the hog-feeding project had been abandoned, and the garbage disposed of by land-fill dumping, the appellant could likely have continued operation under the original agreement without substantial losses. After the increase in compensation was obtained appellant increased the salary of Mr. Milder to $12,000 per year.

The trial court, with commendable thoroughness, filed a memorandum containing extensive findings of fact and a comprehensive discussion of the law. The fundamental basis of the court's decision, however, is indicated by the following: "The court doth further rule that the attempt on the part of the City of St. Joseph, Missouri, and the St. Joseph Sanitation System, Inc., to modify and amend said original contract was contrary to, in violation of and within the prohibitions of Article III, Section 39, subsections 3 and 4 of the Constitution of the State of Missouri, and of Section 432.070 RSMo 1949 [V.A.M.S.]."

■ Upon this appeal it is our duty to review the evidence and make our own findings as to the facts and law. We are primarily concerned, however, with questions of law, as there does not seem to be any controversy about the facts which we deem to be material.

■■ We have concluded that the trial court was correct in ruling that the amendatory contract violated the provisions of Article III, Section 39(3) of the Constitution. The applicable portions of that article read as follows: "The general assembly shall not have power: * * * (3)

To grant or to authorize any county or municipal authority to grant any extra compensation, fee or allowance to a public officer, agent, servant or contractor after service has been rendered or a contract has been entered into and performed in whole or in part; * * *." While the quoted provision is actually a limitation upon the power of the general assembly the practical effect of it is the same as if it applied directly to the City of St. Joseph. The result is that legislative authority to do the acts prohibited therein could not have been obtained and hence the city was precluded from doing same.

A careful reading of the amendatory contract does not disclose that appellant agreed therein to do anything except "to continue to collect and dispose of garbage in accordance with the contract [of July 12, 1949] hereinabove referred to." Obviously, appellant was already bound to do that which it agreed to do in the agreement to amend. The stated purpose of the city in agreeing to the amendment was to make it possible for appellant to continue the garbage collection operation which appellant had found it impossible to do "by reason of conditions beyond its control." For doing that which appellant was already obligated to do under the original contract, the city agreed in the amendment to pay appellant at least $19,000 annually in addition to the amount originally agreed upon. That clearly violated the quoted constitutional provision, as it was a "grant" of "extra compensation * * * to a * * * contractor after * * * a contract has been entered into and performed * * * in part." Article III, Section 39(3), supra. For analogous cases, see Sager v. State Highway Commission of Missouri, 349 Mo. 341, 160 S.W.2d 757, and Spitcaufsky v. State Highway Commission of Missouri, 349 Mo. 117, 159 S.W.2d 647[2].

In connection with the foregoing appellant asserts that the judgment cannot stand because the respondents failed to prove that the four changes specified in the amendatory contract (in addition to the two re-lating to compensation) were not a sufficient consideration for the entire amendment. That contention is without merit. An examination of the two instruments will disclose on the face thereof that the four changes in question were inserted in the agreement for the benefit of appellant and would not constitute a sufficient consideration for the extra compensation.

The next point for our consideration is stated in appellant's brief as follows: "Since appellant was able to justify its inability to proceed with the original contract to the satisfaction of the City, by showing that it (appellant) was confronted with circumstances not contemplated when the contract was made which rendered its performance impossible or unduly onerous, and it was induced to perform by a promise of additional compensation, appellant's right to that compensation was based upon valuable consideration recognized in law and in equity." In support thereof appellant cites Blakeslee v. Board of Water Commissioners, 106 Conn. 642, 139 A. 106, 55 A.L.R. 1319. In that case plaintiff contracted to construct a large dam and later found it very difficult to obtain labor or material except at greatly increased costs because of preparations for this country to enter World War I. Defendant, in recognition of the situation, agreed in writing to pay such additional sum as necessary to prevent plaintiff from suffering actual loss. A proviso in the agreement was that legislation be enacted to authorize the additional payment. Plaintiff performed, the legislation was enacted, but defendant refused to pay. In holding that plaintiff could recover the court stated (106 Conn. loc. cit. 655, 139 A. loc. cit. 111): "Where the contractor can justify his refusal to proceed with the contract by showing that he is confronted with circumstances not contemplated when the contract was made which render its performance impossible or unduly onerous and the promisor, being informed of the situation, induces him by a promise of additional compensation to proceed with it, the contractor's right to that

compensation ought justly to be recognized." While there are a number of factual distinctions between the Blakeslee case and the instant one, we think that case tends to support appellant's contention that its recovery should not be barred by the constitutional provision, supra, as a somewhat similar provision was involved therein. However, we do not consider the Blakeslee case sound and the rule therein stated has not been and, we think, should not be adopted in this state. Appellant has also cited Johnson County Gas Co. v. Stafford, 198 Ky. 208, 248 S.W. 515, and Meech v. City of Buffalo, 29 N.Y. 198, but those cases do not support the instant contention because they do not involve a similar constitutional provision and are factually different from the case at bar.

■ When viewed in retrospect it appears clear that appellant acted improvidently in contracting to collect and dispose of the garbage of a large city for a period of ten years, at a fixed compensation, without some provision in the contract which would protect it from unexpected contingencies or greatly increased costs. To the contrary, the contract specifically provided that the specified compensation would cover all damage or expense arising from unforeseen difficulties. Certainly the fact that appellant may have entered into an improvident contract would afford no basis for creating an exception to the application of a clear constitutional prohibition. Section 39(3), Article III was adopted by the people as a safeguard against the squandering of public money and to prohibit public officers from giving gratuities to contractors, and it may not be cast aside even though one who has acted in good faith may suffer hardships. The courts of this state have adhered to a policy of strictly enforcing the constitutional and statutory safeguards applicable to the contracts of public corporations. Likes v. City of Rolla, 184 Mo.App. 296, 167 S.W. 645; Webb-Boone Paving Co. v. State Highway Commission, 351 Mo. 922, 173 S.W.2d 580; Donovan v. Kansas City, 352 Mo. 430, 175

S.W.2d 874. As indicated, we rule this point against appellant.

The next contention of appellant is that since it had been awarded the exclusive contract for collection of garbage in St. Joseph it became a franchised contractor, which fact, in some manner not made clear to us, favorably affected its right to seek additional compensation during the term of the contract. We are unable to find any merit in that contention. It is conceded that appellant was not a public utility in the sense that it was subject to regulation by the Missouri Public Service Commission or by the Public Utilities Commission provided for in Section 73.650 et seq. RSMo 1949, V.A.M.S. The appellant simply contracted to render a service to the city for a stated compensation. The fact that it was the only contractor authorized to render that particular service would in no manner relieve the contracting parties from the effect of the prohibitory features of Section 39(3), supra.

■■ This suit was not filed for more than four years after the amendatory contract was entered into. Appellant claims that its defense of laches should have been sustained by the trial court. In that connection we observe that delay alone is not sufficient to authorize the bar of laches. " 'Laches in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law.' " Schaeffer v. Moore, Mo.Sup., 262 S.W.2d 854, 860. We find no evidence in this case to indicate that appellant was prejudiced by the delay in filing suit and no attempt is made in the brief to point to any such evidence. The case of State ex rel. Burns v. Stanton, Mo.App., 311 S.W.2d 137, cited by appellant, does not support its contention because, in that case, the defendants had expended a large sum of money in construction work during the period plaintiffs delayed in filing their petition to review a zoning order. The trial

court ruled that "the defense of laches cannot be sustained." We are in accord with that view.

In view of the nature of this review and the theory upon which we have decided this case, we will not discuss other points briefed by appellant as it is apparent that those points would not affect the result herein.

The judgment is affirmed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.