WILLAMETTE MANAGEMENT ASSOCIATES, INC. *v.* KIMBERLY PALCZYNSKI (AC 31641)

Beach, Alvord and Dupont, Js.

Argued November 8, 2011—officially released March 6, 2012

*Kenneth A. Votre,* for the appellant (defendant).

*Laura Pascale Zaino,* with whom, on the brief, were *Susan M. Kirkeby* and *Thomas P. O'Dea,* for the appellee (plaintiff).

*Opinion*

BEACH, J. The defendant, Kimberly Palczynski, appeals from the judgment of the trial court rendered in favor of the plaintiff, Willamette Management Associates, Inc., in the amount of $117,739.04 following a hearing in damages. On appeal, the defendant claims that the court erred by (1) not allowing the defendant to replead her answer and special defense after granting the plaintiff leave to correct a defective return date on the writ of summons and complaint and (2) declining to enforce a subsequent agreement between the parties. We affirm the judgment of the trial court.

The court found the following facts in its memorandum of decision. "In this case, the plaintiff . . . sues the defendant . . . for breach of contract, and the proceeding before the court is a hearing in damages.[1] The plaintiff is an accounting firm which engaged in business evaluations. It entered into a written contract with the defendant, dated January 27, 2005, by which the plaintiff agreed to perform extensive services for the

---

[1] The defendant was defaulted and then failed to file timely any notice of defenses to be raised at a hearing in damages. Thus, the hearing in damages was limited to the defendant's right to contest damages.

defendant involving her husband's business interest in a certain corporation, in connection with a pending marital case between the couple. The work . . . included assisting the defendant's attorney during the discovery process to obtain necessary information to value such interest, preparing a valuation report and testifying at depositions and at the trial. Billing procedures were outlined in detail, the defendant paid the plaintiff $5000 as a retainer on the agreement, and she was billed twice monthly. The contract also required the defendant to pay any outstanding fees to the plaintiff before its principal, Alan Schachter, would be asked to provide expert testimony at trial.

"Shortly before the marital trial, the outstanding balance of the plaintiff's bills was $72,000, less the $5000 paid, for a total of $67,000. The plaintiff was informed by the defendant's attorney that the defendant did not have the ability to pay the bill. As a result, Schachter wrote to the [defendant] on July 20, 2007, exhorting her to make some type of arrangement with the plaintiff, since he believed his expert testimony would be important to the outcome of her case. He wrote, 'as a courtesy to you and [your lawyer] I have advised [your lawyer] that in lieu of immediate payment, my firm would be willing to accept a mortgage on your real property, a confession of judgment, or any other collateral held in escrow to secure your obligation to us.' What followed was a written agreement between the parties dated July 31, 2007 . . . calling for the plaintiff to continue to perform the same work, including trial preparation and testimony at trial, as was required by the plaintiff by the original retainer agreement. What changed was a reduction of the sum to be paid by the defendant to the plaintiff for all work done or to be done, from $67,000 to a total of $57,000,[2] and a new

---

[2] The July 31, 2007 agreement reflects a total of $57,500.

payment schedule.[3] The schedule called for monthly payments ranging from $1000 per month to $2000 per month from January 1, 2008, to June 1, 2009, and the balance monthly from July 1, 2009, at $2500 per month thereafter, until the balance of the settlement amount was paid in full. The defendant never made any payments required by the [s]ettlement [a]greement."

The plaintiff served a one count complaint on May 28, 2008, alleging that the defendant breached agreements dated January 27, 2005 (first agreement), and July 31, 2007 (second agreement), by failing to make payments pursuant to either agreement. On June 18, 2008, the court granted the plaintiff's motion for default against the defendant for failure to appear. The defendant thereafter appeared through counsel. On July 24, 2008, the court granted the plaintiff's motion for default against the defendant for failure to plead to the complaint. On October 20, 2008, the defendant filed an answer, two special defenses and a three count counterclaim alleging that the plaintiff failed to conform its work to the relevant standard of care.[4] The defendant also moved to strike the action from the hearing in damages list and moved to open the default for failure to plead. Noting that there was no objection, on February 9, 2009, the clerk of the court granted the defendant's motion to open the default for failure to plead. Notice of the court's action, however, was not issued until February 23, 2009, and, in the interim, the plaintiff filed an objection to the motion on February 18, 2009. The court subsequently sustained the plaintiff's objection to the

---

[3] The second agreement did not provide for any of the collateral suggested by Schachter in his letter to the defendant.

[4] The defendant was not entitled to file any responsive pleading until and unless the default was vacated. See *Automotive Twins, Inc.* v. *Klein,* 138 Conn. 28, 33, 82 A.2d 146 (1951) ("[a default] is an order of the court the effect of which is to preclude the defendant from making any further defense in the case so far as liability is concerned").

motion on March 19, 2009, and vacated the clerk's action granting the motion to open the default.

Thereafter, at a scheduled hearing in damages on April 29, 2009, a defective return date on the writ of summons—apparently the result of a scrivener's error—was discovered. The court granted the plaintiff's motion to amend the writ of summons and complaint to correct the error; thereafter an amended complaint was filed. The defendant then filed an answer and a special defense on June 5, 2009. A hearing in damages was held, at which the court declined to recognize as effective the defendant's answer to the amended complaint because she had been defaulted and because no substantive change had been made to the complaint. The court then issued a memorandum of decision concluding that the first agreement was controlling, and, accordingly, rendered judgment in favor of the plaintiff in the amount of $117,739.04.[5] This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first argues that the court erred by declining to give effect to her answer and special defense filed after the filing of the amended complaint, which corrected the scrivener's error in the return date. We disagree.

The following additional facts are relevant to our discussion. The original complaint dated May 15, 2008, specified a return date of June 10, 2008. The writ of summons reflected a return date of June 10, 2007. The 2007 date obviously was erroneous. Apparently the error was not discovered until the April 29, 2009 hearing, when the court read aloud the return date and the plaintiff's counsel stated that the return date in the writ

---

[5] The court explicitly noted that it accepted the plaintiff's calculation of damages for breach of the first agreement contained in the plaintiff's posttrial brief, which calculation included attorney's fees, costs and interest.

of summons was a scrivener's error. The defendant's counsel subsequently claimed that the court lacked subject matter jurisdiction as a result of the error. The plaintiff's counsel argued that a defective return date, at most, affected personal jurisdiction, and thus the defense had been waived because it had not been raised within thirty days after the defendant's appearance pursuant to Practice Book §§ 10-30 and 10-32. The court ruled that subject matter jurisdiction was not implicated and that the issue was governed by General Statutes § 52-72,[6] and thus it was a defect that was curable by amendment. At the court's direction, the plaintiff subsequently amended the writ of summons to reflect a return date of June 3, 2008, and served an amended complaint dated May 5, 2008, with a return date of June 3, 2008. On June 5, 2009, the defendant filed an answer and a special defense. At the rescheduled hearing in damages on August 4, 2009, the defendant moved to strike the case from the hearing in damages list on the ground that the plaintiff had not filed a reply to the special defense and that the pleadings were, therefore, still open. The court rejected the defendant's argument, finding that there had been a default for failure to appear and for failure to plead. The court did not accept the repleading as effective, noting that "[n]othing changed in the substantive pleadings and [the defendant has] been defaulted."

We begin with the applicable standard of review. "Whether to grant a request to amend the pleadings is a matter within the discretion of the trial court, and this court will rarely overturn the decision of the trial court. . . . Judicial discretion . . . is always legal discretion, exercised according to the recognized principles of equity. . . . While its exercise will not

---

[6] General Statutes § 52-72 (a) provides: "Any court shall allow a proper amendment to civil process which has been made returnable to the wrong return day or is for any other reason defective, upon payment of costs taxable upon sustaining a plea in abatement."

ordinarily be interfered with on appeal to this court, reversal is required where the abuse is manifest or where injustice appears to have been done. . . .

"Under the statutes and rules of practice, the court may in its discretion, in a proper case, allow the filing of amendments to pleadings before, during and after trial. . . . Amendments should be made seasonably. Factors to be considered in passing on a motion to amend are the length of delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment. . . . The essential tests are whether the ruling of the court will work an injustice to either [party] and whether the granting of the motion will unduly delay a trial." (Citations omitted; internal quotation marks omitted.) *Kelley* v. *Tomas*, 66 Conn. App. 146, 174–75, 783 A.2d 1226 (2001). "It is the . . . burden [of the party that requested the amendment] to demonstrate that the trial court clearly abused its discretion." (Internal quotation marks omitted.) *Canterbury* v. *Deojay*, 114 Conn. App. 695, 705, 971 A.2d 70 (2009).

The defendant argues that because the court granted the plaintiff leave to amend the writ of summons and complaint to correct the return date, she should have been allowed to plead to the amended complaint. The plaintiff asserts that the amendment responded to and corrected a procedural technicality only—a scrivener's error. Although the plaintiff followed the court's order and filed an amendment, it has maintained that, under the circumstances, no amendment was necessarily required. Relying on *Merrill* v. *NRT New England, Inc.*, 126 Conn. App. 314, 12 A.3d 575, cert. granted on other grounds, 300 Conn. 925, 15 A.3d 629 (2011), the plaintiff further asserts that the defective return date implicated only personal jurisdiction.

Our Supreme Court has stated that a defect in process implicates personal jurisdiction. See *Lostritto* v. *Community Action Agency of New Haven, Inc.*, 269 Conn.

10, 31–33, 848 A.2d 418 (2004) (holding that noncompliance with General Statutes § 52-102b, which requires service of apportionment complaint within 120 days after return date of original complaint, implicated personal jurisdiction); see also *Bohonnon Law Firm, LLC* v. *Baxter*, 131 Conn. App. 371, 377–78 and n.9, 27 A.3d 384 (concluding that defendant's claim of defective process based on failure to establish return date and failure of service and return within statutory time frames implicated personal jurisdiction), cert. denied, 303 Conn. 902, 31 A.3d 1177 (2011). A defective return date is a curable defect. See General Statutes § 52-72 (a) ("[a]ny court shall allow a proper amendment to civil process which has been made returnable to the wrong return day or is for any other reason defective, upon payment of costs taxable upon sustaining a plea in abatement"); *Coppola* v. *Coppola*, 243 Conn. 657, 663, 707 A.2d 281 (1998) ("the purpose of § 52-72 is to provide for amendment of otherwise incurable defects that go to the court's jurisdiction" [internal quotation marks omitted]).

In the present case, the scrivener's error appeared on the writ of summons.[7] Pursuant to § 52-72, the court properly allowed the plaintiff to amend its process to reflect a correct return date. See *Coppola* v. *Coppola*, supra, 243 Conn. 664–66; *Concept Associates, Ltd.* v. *Board of Tax Review*, 229 Conn. 618, 625–26, 642 A.2d 1186 (1994) (holding that plaintiff could amend its process to correct return date even though return date already passed). The defect in process was curable, and therefore it was a matter of personal jurisdiction only.

The defendant urges us to conclude that because the complaint was amended to correct the return date, the

---

[7] The writ of summons had a return date of June 10, 2007, while the original complaint had a return date of June 10, 2008. Both the complaint and the writ of summons were later amended to reflect a return date of June 3, 2008. No issue has been raised regarding the discrepancy between June 3 and June 10.

default was in effect opened and she should have been allowed to plead to the newly filed amended complaint. She relies on our Supreme Court's holding in *Coppola* v. *Coppola*, supra, 243 Conn. 657, for support. In that case, the court held that § 52-72 permits amendment of the return date of civil process to correct a party's failure to return the process at least six days before the return date. Id., 658–59. The defendant asserts that it follows from the *Coppola* court's discussion regarding the remedial nature of the statute that in the present case, "[i]t is inequitable to allow the plaintiff to correct an error that deprived the court of jurisdiction, but not to allow the defendant to plead." She relies also on Practice Book § 10-61[8] for her position that her responsive pleading, if found proper, was timely. We do not agree.

In *Coppola*, the court addressed whether it was proper for a trial court to allow an amendment to process when the plaintiff did not return the process six days prior to the return day as required by statute. In that case, the writ of summons and complaint had been returned to court on the return date, instead of at least six days before the return date, as required by General Statutes § 52-46a. *Coppola* v. *Coppola*, supra, 243 Conn. 660. After the defendant moved to dismiss, the plaintiff attempted to amend the return date from August 15 to August 22, in order to retrofit the dates. Id. The trial court denied the plaintiff's motion to amend and dismissed the case, and this court affirmed the judgment. Id., 660–61.

---

[8] Practice Book § 10-61 provides: "When any pleading is amended the adverse party may plead thereto within the time provided by Section 10-8 or, if the adverse party has already pleaded, alter the pleading, if desired, within ten days after such amendment or such other time as the rules of practice, or the judicial authority, may prescribe, and thereafter pleadings shall advance in the time provided by that section. If the adverse party fails to plead further, pleadings already filed by the adverse party shall be regarded as applicable so far as possible to the amended pleading."

The Supreme Court reversed our judgment. It held that pursuant to § 52-72, the trial court should have allowed the amended pleading, so that the case would be allowed to proceed. Id., 659. It noted that § 52-72 was a remedial statute allowing for the correction of procedural defects and that dismissal where no prejudice had occurred and where there was no impediment to the progress of the case would be draconian. Id., 664–65. The court concluded that the defendant could respond to the complaint and the case could proceed. Id., 666.

In *Coppola*, the defendant discovered the defect immediately and had not pleaded responsively at the time the case was dismissed; id., 660; thus, amendment of the return date would not have prejudiced the defendant's ability to plead responsively. In the present case, the defendant never discovered the defect in the writ of summons and was certainly not prejudiced by the defect. From all appearances, the defect in the writ of summons had nothing at all to do with her subsequent defaults, and there is, therefore, no equitable reason why a technical amendment to the writ of summons should create the opportunity to plead responsively. The only change between the original complaint and the amended complaint was the return date and the date of the complaint. All substantive allegations in the complaint remained precisely the same. The court did not vacate its entry of default against the defendant, and the purpose of amending the complaint was solely to remedy a typographical error. The defendant's substantive rights were not affected by the amendment, and she has not demonstrated prejudice. "If the effect of an amendment of a complaint so made is to substantially change the cause of action originally stated, the defendant is entitled to file new or amended pleadings and present further evidence. Also, if the amendment interjects material new issues, the adversary is entitled

to reasonable opportunity to meet them by pleading and proof." *Mazulis* v. *Zeldner*, 116 Conn. 314, 317, 164 A. 713 (1933). No change of any kind, and thus certainly not a substantial change, was made to the cause of action in the present case. See *Richards* v. *Trudeau*, 54 Conn. App. 859, 863, 738 A.2d 215 (1999) (holding that court did not abuse its discretion in refusing to give effect to defendants' answer when filed almost one year after default entered against them). The court properly exercised its discretion by prohibiting the defendant from filing a pleading to the amended complaint when the amendment served merely to correct an erroneous return date.[9]

## II

The defendant next argues that the court erred by concluding that the first agreement of January 27, 2005, rather than the second agreement of July 31, 2007, controlled. Specifically, she asserts that the second agreement is a novation and is the only enforceable agreement between the parties, as dictated by the complete integration clause stating that the agreement superseded any prior writings.

The following additional facts are relevant to this claim. At the August 4, 2009 hearing in damages, the

[9] In her reply brief, the defendant relies on General Statutes § 52-130, which provides: "Parties may amend any defect, mistake or informality in the pleadings or other parts of the record or proceedings. When either party supposes that in any part of the pleadings he has missed the ground of his plea, and that he can plead a different plea that will save him in his cause, he may change his plea, answer, replication or rejoinder, as the case may be, and plead anew, and the other party shall have reasonable time to answer the same; and, in any case when a party amends or alters any part of the pleadings or pleads anew, if it occasions any delay in the trial or inconvenience to the other party, he shall be liable to pay costs at the discretion of the court. Any court may restrain the amendment or alteration of pleadings, so far as may be necessary to compel the parties to join issue in a reasonable time for trial." This section allows amendments in some situations and allows responses to substantive amendments. It does not affect the result in this case.

court heard argument on the issue of whether the first or second agreement was controlling. The plaintiff argued that because the defendant was in breach, she should not be allowed to enforce the second agreement that included a reduced payment amount. The plaintiff requested the court's permission to submit a trial brief providing case law in support of its position. The court granted the plaintiff's request. The defendant argued that the plain language of the second agreement dictated that it was the controlling agreement and that ended the inquiry. In its posttrial brief, the plaintiff argued that the defendant's breach precluded her from enforcing the second agreement and that that agreement lacked consideration. The defendant argued that there was consideration for the second agreement on the basis of a mutual exchange of promises.

The court found that the second agreement "was not supported by adequate consideration and is not enforceable against the plaintiff." The court reasoned that under the second agreement, the plaintiff did not receive any benefits and "was still required to perform the same work required to be done under the [first] agreement . . . ." The court further found that even if consideration was present, the second agreement would still be unenforceable by the defendant because she had breached that agreement.

"[C]onsideration is [t]hat which is bargained-for by the promisor and given in exchange for the promise by the promisee . . . . Consideration consists of a benefit to the party promising, or a loss or detriment to the party to whom the promise is made." (Internal quotation marks omitted.) *General Electric Capital Corp.* v. *Transport Logistics Corp.*, 94 Conn. App. 541, 546–47, 893 A.2d 467 (2006). "Whether an agreement is supported by consideration is a factual inquiry reserved for the trier of fact and subject to review under the clearly erroneous standard." (Internal quotation marks

omitted.) *Viera* v. *Cohen*, 283 Conn. 412, 442, 927 A.2d 843 (2007). The conclusion drawn from the facts so found, i.e., whether a particular set of facts constitutes consideration in the particular circumstances, is a question of law; see *Town Bank & Trust Co.* v. *Benson*, 176 Conn. 304, 307–308, 407 A.2d 971 (1978); and, accordingly, is subject to plenary review. See *Santoro* v. *Santoro*, 132 Conn. App. 41, 47, 31 A.3d 62 (2011).

In support of her position that the second agreement is controlling, the defendant argues that that document is a novation. "Novation may be broadly defined as a substitution of a new contract or obligation for an old one which is thereby extinguished." (Internal quotation marks omitted.) *Bushnell Plaza Development Corp.* v. *Fazzano*, 38 Conn. Sup. 683, 688, 460 A.2d 1311 (1983). "Novation" and "substitute contract" often are used interchangeably to refer to a subsequent contract. See 2 Restatement (Second), Contracts § 280, reporter's note (1981) (noting that "[c]ourts sometimes use 'novation' in situations in which this Restatement would use 'substituted contract' [§ 279] or 'modification' [§ 89]); 29 S. Williston, Contracts (4th Ed. Lord 2003) § 73:36, p. 115 (noting that accord and satisfaction, substituted contract and novation are often confused by courts where question is whether agreement is intended to result in satisfaction).[10] Our Supreme Court has stated that a novation "is usually used with reference to instances in

[10] The Restatement of Contracts and Professor Williston's treatise on contracts use the term "substituted contract." Our Supreme Court has used "substitute contract"; see, e.g., *Assn. Resources, Inc.* v. *Wall*, 298 Conn. 145, 186, 189, 2 A.3d 873 (2010); and "substituted contract." See, e.g., *Tolland Enterprises* v. *Scan-Code, Inc.*, 239 Conn. 326, 333 n.9, 684 A.2d 1150 (1996). This court has used "substitute contract;" see, e.g., *Atlas* v. *Miller*, 20 Conn. App. 680, 682, 570 A.2d 219 (1990); and has quoted a Restatement provision addressing "substituted contract." See *Friedman* v. *Millpit Corp.*, 49 Conn. App. 354, 358 n.3, 713 A.2d 1288, cert. denied, 247 Conn. 925, 719 A.2d 1168 (1998). We use "substitute contract" in this opinion but note that our usage of the term encompasses "substituted contract" as used by the Restatement and Williston's treatise.

which a new party is introduced into the new contract, while 'substitute contract' is the designation commonly employed to cover agreements between the same parties which supersede and discharge prior contract obligations." *Riverside Coal Co.* v. *American Coal Co.*, 107 Conn. 40, 44–45, 139 A. 276 (1927); see also 2 Restatement (Second), supra, § 279 (defining substituted contract as "contract that is itself accepted by the obligee in satisfaction of the obligor's existing duty"); 2 Restatement (Second), supra, § 280 (defining novation as type of substituted contract "that includes as a party one who was neither the obligor nor the obligee of the original duty").

Although the defendant argues that the second agreement is a novation, or more accurately, a substitute contract, and that its language requires it to be the controlling contract, it is first necessary to determine whether that agreement meets the legal definition of a contract. Professor Williston's treatise on contracts defines contract as "a promise or set of promises for breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty. The heart of contract is thus found both in its promissory nature and in its enforceability." (Internal quotation marks omitted.) 1 S. Williston, Contracts (4th Ed. Lord 2007) § 1:1. Accordingly, to constitute a substitute contract, an agreement must be supported by consideration. *Vachon* v. *Tomascak*, 155 Conn. 52, 56, 230 A.2d 5 (1967); see also 2 Restatement (Second), supra, § 279, comment (b) (substituted contract not effective unless "supported by consideration or some substitute for consideration"). "[T]he doctrine of consideration is fundamental in the law of contracts, the general rule being that in the absence of consideration an executory promise is unenforceable." *Harley* v. *Indian Spring Land Co.*, 123 Conn. App. 800, 825, 3 A.3d 992 (2010). In order for there to be valid consideration, "a party

. . . [must] do, or promise to do, something further than, or different from, that which he is already bound to do." *Thermoglaze, Inc.* v. *Morningside Gardens Co.*, 23 Conn. App. 741, 745, 583 A.2d 1331, cert. denied, 217 Conn. 811, 587 A.2d 153 (1991); see also 29 S. Williston, supra, § 73:17 ("if the undertaking by one party is simply to perform the whole or part of what it promised in the original contract, this will not support a promise by the other party to perform what it had previously agreed to do and something more; or, to put the same matter in other words, an existing contract cannot be altered by mutual assent by an agreement merely to give one party a right or privilege, or subject the other party to a burden that it did not previously have").

In the present case, the court found that the second agreement failed for lack of consideration because it "conferred no benefits on the plaintiff, which was still required to perform the same work required to be done under the [first] agreement, and did not eliminate or reduce any risk of collection, which remained the same as before." At the time of the making of the second agreement, the first agreement was still in effect.[11] Notwithstanding the integration clause in the second agreement that expressly superseded all prior writings between the parties, at the time that the parties entered into the second agreement, the defendant was legally obligated pursuant to the first agreement to pay the plaintiff the full amount for services rendered. The second agreement purported to reduce the amount owed by the defendant but did not alter the obligations of the plaintiff. "Generally, a promise to do something which the promisor is already legally obligated to do does not constitute consideration sufficient to support a valid contract." (Internal quotation marks omitted.) *Jackson* v. *Water Pollution Control Authority*, 278 Conn. 692, 707 n.13, 900 A.2d 498 (2006); see *Gianetti*

---

[11] Neither party has disputed that the first agreement was a valid contract.

v. *Norwalk Hospital*, 211 Conn. 51, 61, 557 A.2d 1249 (1989); see also *Marcus* v. *DuPerry*, 223 Conn. 484, 489, 611 A.2d 859 (1992) (concluding that second contract, if in fact made, would not be void for lack of consideration, where client had discharged attorney two months before second contract purportedly made, and thus at time of making of second contract attorney had no existing contractual obligation to client); *Brian Construction & Development Co.* v. *Brighenti*, 176 Conn. 162, 166, 405 A.2d 72 (1978) ("[i]t is an accepted principle of law in this state that when a party agrees to perform an obligation for another to whom that obligation is already owed, although for lesser remuneration, the second agreement does not constitute a valid, binding contract").[12] Accordingly, it was not erroneous for

---

[12] A very common type of subsequent agreement premised on existing legal obligations involves the question of "whether a promise to pay additional compensation for the continued performance of work which the promisee is already obligated to the promisor to do by the terms of an existing contract, is supported by a sufficient consideration." *Blakeslee* v. *Board of Water Commissioners*, 106 Conn. 642, 649, 139 A. 106 (1927). In *Blakeslee*, supra, 106 Conn. 656, our Supreme Court concluded that "where a contract must be performed under burdensome conditions not anticipated, and not within the contemplation of the parties at the time when the contract was made, and the promisee measures up to the right standard of honesty and fair dealing, and agrees, in view of the changed conditions, to pay what is then reasonable, just, and fair, such new contract is not without consideration within the meaning of that term, either in law or in equity." (Internal quotation marks omitted.) This court quoted the basis for this rule in *New England Rock Services, Inc.* v. *Empire Paving, Inc.*, 53 Conn. App. 771, 777–78, 731 A.2d 784, cert. denied, 250 Conn. 921, 738 A.2d 658 (1999): "What unforeseen difficulties and burdens will make a party's refusal to go forward with his contract equitable, so as to take the case out of the general [preexisting duty] rule and bring it within the exception, must depend upon the facts of each particular case. They must be substantial, unforeseen, and not within the contemplation of the parties when the contract was made." (Internal quotation marks omitted.) In *Blakeslee*, for example, the parties did not contemplate that the United States would become involved in World War I, thus creating an inability to secure laborers for the contract. Id., 645. Similarly, in *Brian Construction & Development Co.* v. *Brighenti*, supra, 176 Conn. 169, the court held that substantial rubble beneath the surface of the construction site that all parties agreed had to be removed was an unforeseen burdensome condition.

the court to conclude that the second agreement was not supported by consideration and thus was unenforceable.[13]

As an alternative ground for its conclusion, the court found that "[e]ven if, somehow, consideration could be breathed into the life of the [second] agreement, the court will not enforce it against the plaintiff." As authority for this conclusion, the court cited a United States Court of Appeals for the Seventh Circuit decision written by Judge Richard Posner: "If you commit a material

The present case is perhaps unusual in that the sum that the defendant owed under the first agreement was reduced by the terms of the second agreement, while the plaintiff was subject to the same performance obligations under both agreements. The alteration of one party's obligations by requiring additional compensation while the other party's duties remain unchanged, as in *Blakeslee*, is, however, analogous. In the present case, the only reason present in the record for the defendant's nonpayment is her inability to pay. We cannot conclude that that was an unforeseen substantial burden not within the contemplation of the parties at the time of the making of the first agreement, particularly when the defendant was involved in a pending marital dissolution action at which her interest in part of her husband's assets was going to be determined. Accordingly, the circumstances in the present case do not fall under the exception to the preexisting duty rule articulated in *Blakeslee*.

[13] We note that in the present case, the plaintiff fully performed and the defendant did not fully perform the obligations under the second agreement. Had full performance been rendered by both parties pursuant to the second agreement and the plaintiff sought to bring an action to enforce the first agreement, equitable principles may arguably have applied to reach a different result. "Under the law of contract, a promise is generally not enforceable unless it is supported by consideration. . . . [Our Supreme Court] has recognized, however, the development of liability in contract for action induced by reliance upon a promise, despite the absence of common-law consideration normally required to bind a promisor. . . . Section 90 of the Restatement [(Second) of Contracts] states that under the doctrine of promissory estoppel [a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. . . . A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance." (Internal quotation marks omitted.) *Saye* v. *Howe*, 92 Conn. App. 638, 647–48, 886 A.2d 1239 (2005).

breach of contract, the other party can walk away from the contract without liability, and can do so as soon as you announce your intentions even if the time for the performance that you have repudiated hasn't arrived." *American Hospital Supply Corp.* v. *Hospital Products Ltd.*, 780 F.2d 589, 599 (7th Cir. 1986). The trial court reasoned: "In the present case, the defendant breached the [second] agreement, paying absolutely nothing on the contract and can certainly be deemed as having repudiated it altogether." It is clear from the court's findings that the defendant failed to perform under the second agreement. That agreement included a payment schedule and the defendant failed to make any payments pursuant to it. "One cannot recover upon a contract unless he has fully performed his own obligation under it, has tendered performance, or has some legal excuse for not performing." *Automobile Ins. Co.* v. *Model Family Laundries, Inc.*, 133 Conn. 433, 437, 52 A.2d 137 (1947); *Shah* v. *Cover-It, Inc.*, 86 Conn. App. 71, 77, 859 A.2d 959 (2004). Accordingly, even if the second agreement was otherwise an enforceable contract, the defendant, who was clearly in breach, would not have a legal right to recover under it.

The judgment is affirmed.

In this opinion the other judges concurred.