GEORGINA SPILKE *v.* JOSEPH M.
WICKLOW III ET AL.
(AC 33712)

Lavine, Robinson and Espinosa, Js.

252

Argued May 14—officially released September 25, 2012

*Georgina Spilke,* pro se, the appellant-appellee (plaintiff).

*Glenn L. Formica,* for the appellees-appellants (defendant Kenneth Spilke et al.).

*Opinion*

ROBINSON, J. The self-represented plaintiff, Georgina Spilke, appeals from the judgment of the trial court awarding her $30,003 against the defendant, her former husband, Kenneth Spilke, and $1 in nominal damages

against the defendant Jennifer Ballard[1] on her vexatious litigation claim. The defendants cross appeal from the judgment rendered against them. The vexatious litigation action stemmed from a motion for contempt brought by Spilke against the plaintiff. On appeal, the plaintiff argues that the trial court erred in (1) determining that Ballard did not materially participate in the motion for contempt filed by Spilke, (2) limiting the proximate cause for her vexatious litigation claim to Spilke's motion for contempt, and (3) not holding Ballard liable for damages and not awarding a larger damages award. In Spilke's cross appeal, he argues that the trial court erred in (1) finding that the plaintiff had proven emotional distress and (2) awarding the plaintiff damages for emotional distress. In both Spilke's and Ballard's cross appeals, they argue that the trial court (1) erred in denying their motion to strike the case from the hearing in damages list when the plaintiff had repleaded her complaint and (2) abused its discretion in failing to open the default judgment entered against the defendants. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of the plaintiff's and the defendants' claims on appeal. The plaintiff and Spilke were divorced in 2003. In 2004, Spilke filed a postjudgment motion for contempt against the plaintiff. In its memorandum of decision, the court, *Frazzini, J.*, detailed the background of the motion for contempt: "[Kenneth Spilke's] motion for contempt claims that his ex-wife

---

[1] Ballard is presently married to Kenneth Spilke. Kenneth Spilke will be referred to as Spilke or jointly with Ballard as the defendants, and Georgina Spilke will be referred to as the plaintiff. The plaintiff originally brought suit against Spilke and Ballard as well as Spilke's attorney, Joseph M. Wicklow III, and the law firm of Lasala, Walsh, Wicklow & Velardi, LLC. The court granted a motion to strike count one and count two of the complaint as to Wicklow and Lasala, Walsh, Wicklow & Velardi, LLC.

[Georgina Spilke] has violated a provision in the dissolution decree barring her from pursuing a deficiency judgment against him in a foreclosure action on a condominium unit that was once the marital home. [Kenneth Spilke] claims [that Georgina Spilke] has violated this clause because a limited liability company (LLC) owned by [Georgina Spilke's] sons has acquired and exercised the right to proceed on the deficiency judgment. [Georgina Spilke] denies that the LLC, owned by her sons, is acting on her behalf." The court determined that Spilke did not meet his burden of proving that the plaintiff was in violation of the dissolution judgment and ruled in the plaintiff's favor on the motion for contempt.

The plaintiff filed a complaint in January, 2007, alleging vexatious litigation based on Spilke's motion for contempt.[2] As to the defendants, the complaint asserted that Spilke at no time had "any facts or evidence to demonstrate that [she] in any way violated the [d]ivorce [j]udgment [a]greement." The plaintiff provided detailed background of the relationship between her and Spilke, and she asserted that the filing of the motion for contempt was used as a means to prevent a deficiency judgment against Spilke in another matter and to prevent the plaintiff, creditors and the Internal Revenue Service from discovering Spilke's hidden assets and income.

On March 9, 2007, the plaintiff filed a motion for default for failure to plead against the defendants. The court granted the motion as to Spilke on March 15,

---

[2] The plaintiff filed revised complaints on May 4 and August, 20, 2007, and on April 14, 2008, after the defendant Joseph M. Wicklow III and the defendant law firm of Lasala, Walsh, Wicklow & Velardi, LLC, filed requests to revise. The court subsequently granted a motion to strike as to those defendants. See footnote 1 of this opinion. The plaintiff also filed an amended complaint on July 28, 2008.

2007, and as to Ballard on March 26, 2007.[3] On April 12, 2010, the plaintiff filed a certificate of closed pleadings and requested a hearing in damages. The hearing in damages was held on February 21, 2011. In its memorandum of decision, the court noted that, because the defendants did not give notice that the allegations of the complaint would be contested under Practice Book § 17-34, the entry of a default operated as a confession by the defendants of the material facts alleged in the complaint. Construing the pleadings liberally, the court determined that the complaint made a claim for vexatious litigation at common law and also under the vexatious litigation statute, General Statutes § 52-568. The court found that the plaintiff "is entitled to $1 in nominal damages for economic damages and $10,000 in noneconomic damages on her common-law claim [and that] she would also be entitled to the same compensatory damage claim on the statutory claim under § 52-568 of the General Statutes. . . . Given the serious allegations of the complaint, treble damages would be warranted under the statute, which will make the total judgment $30,003." The court continued by determining that, on the basis of the complaint, it could not "conclude how or in what manner the defendant Ballard was directly responsible for instigating the motion for contempt or [what] can be said, in any ascertainable way, to have caused the damage resulting from the unsupported and unjust motion as dictated by the complaint." The court therefore awarded damages in the amount of $30,003 against Spilke and $1 in nominal damages against Ballard. These appeals followed. Additional facts will be provided when necessary.

I

PLAINTIFF'S APPEAL

We begin with the plaintiff's claims. She argues that the trial court erred in (1) determining that Ballard did

---

[3] There is a handwritten note on the order page, dated January 30, 2008, which states that "[u]pon review [t]he court recognizes an appearance for

not materially participate in the motion for contempt filed by Spilke, (2) limiting the proximate cause for the vexatious litigation claim to Spilke's motion for contempt, and (3) not holding Ballard liable for damages and not awarding a larger damages award. We address each argument in turn.

A

The plaintiff's first claim on appeal is that the court erred in determining that Ballard did not materially participate in the motion for contempt filed by Spilke. In her complaint, the plaintiff detailed what she deemed to be an intricate conspiracy between Spilke and Ballard, stemming from 1997, to hide Spilke's assets and income. The plaintiff argues that the complaint detailed the "plan" to transfer assets to Ballard, and to defraud the plaintiff, creditors and the Internal Revenue Service. She argues that the "collusive transfer of assets in 1999, just prior to [the] divorce proceedings," ultimately led to Spilke's motion for contempt. We disagree.

The court determined that the complaint did not demonstrate a link between Ballard and the motion for contempt filed by Spilke. The court found: "The original complaint contains a litany of how the defendants . . . conspired to conceal marital assets, and Mr. Spilke falsely testified as to his business activities. It then claims [that the defendants] hired an attorney and his firm, who were originally defendants but who were removed from the case pursuant to a motion to strike. In any event the attorney is said to have filed the motion for contempt at issue here 'on behalf of his client Kenneth Spilke.' In the fifty-five paragraphs of the entire complaint there is no actual link between any efforts made to hide Mr. Spilke's assets by Ballard to the actual

Jennifer Ballard was in file as of 3/22/07 so default for failure to plead should have been granted on 3/26/07."

filing of the motion for contempt; for all the complaint alleges this was an adventure he pursued on his own."

"A default admits the material facts that constitute a cause of action . . . and entry of default, when appropriately made, conclusively determines the liability of a defendant. . . . If the allegations of the plaintiff's complaint are sufficient on their face to make out a valid claim for the relief requested, the plaintiff, on the entry of a default against the defendant, need not offer evidence to support those allegations. . . . Therefore, the only issue before the court following a default is the determination of damages. . . . A plaintiff ordinarily is entitled to at least nominal damages following an entry of default against a defendant in a legal action. . . .

"In an action at law, the rule is that the entry of a default operates as a confession by the defaulted defendant of the truth of the material facts alleged in the complaint which are essential to entitle the plaintiff to some of the relief prayed. It is not the equivalent of an admission of all of the facts pleaded. The limit of its effect is to preclude the defaulted defendant from making any further defense and to permit the entry of a judgment against him on the theory that he has admitted such of the facts alleged in the complaint as are essential to such a judgment. It does not follow that the plaintiff is entitled to a judgment for the full amount of the relief claimed. The plaintiff must still prove how much of the judgment prayed for in the complaint he is entitled to receive. . . .

"Thus, we must examine whether the allegations set forth in each count of the plaintiff's complaint are sufficient on their face to make out a valid claim for the relief requested. . . . Our review of the legal sufficiency of pleadings is plenary. . . . To the extent that our analysis goes beyond the facial validity of the complaint and into the court's findings of fact at the hearing in

damages, such findings will be reversed only if they are clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Whitaker* v. *Taylor*, 99 Conn. App. 719, 725–27, 916 A.2d 834 (2007).

"The cause of action for vexatious litigation permits a party who has been wrongfully sued to recover damages. . . . In Connecticut, the cause of action for vexatious litigation exists both at common law and pursuant to statute. Both the common law and statutory causes of action [require] proof that a civil action has been prosecuted . . . . Additionally, to establish a claim for vexatious litigation at common law, one must prove want of probable cause, malice and a termination of suit in the plaintiff's favor. . . . The statutory cause of action for vexatious litigation exists under § 52-568, and differs from a common-law action only in that a finding of malice is not an essential element, but will serve as a basis for higher damages." (Citations omitted; internal quotation marks omitted.) *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, 286 Conn. 548, 553–54, 944 A.2d 329 (2008).

We conclude that the court did not err in determining that Ballard did not participate in the motion for contempt that is the basis of the plaintiff's vexatious litigation claim. Although the plaintiff argues that Ballard was involved in a purported conspiracy to hide Spilke's assets from the plaintiff, the vexatious litigation claim stems solely from the motion for contempt filed by Spilke, and not the divorce proceedings that took place between Spilke and the plaintiff. Taking the allegations set forth in the complaint as true, Ballard may have assisted Spilke in concealing assets from the plaintiff. The plaintiff, however, did not allege in the complaint, nor demonstrate at the hearing in damages, that Ballard played any part in the actual filing of the motion for contempt. As the trial court correctly noted, the complaint specifically asserts that Spilke filed the motion

for contempt on October 27, 2004. The court therefore did not err in determining that Ballard did not participate in the filing of the motion for contempt.

B

The plaintiff's second claim on appeal is that the court erred in limiting the proximate cause for the vexatious litigation claim to Spilke's motion for contempt. She argues that the defendants' conspiracy stemming from the time of the divorce proceedings is the cause of all subsequent tortious litigation, including Spilke's motion for contempt. She contends that all of the proceedings surrounding the divorce were "vexatious litigation superimposed on a simple divorce . . . ." We disagree.

In its memorandum of decision, the court stated: "The court in no way disputes [the plaintiff's] assertions about her past treatment, but given the specific nature of the action brought and the requirements of proximate cause it concludes the claims made are far beyond what is just and reasonable. The issue before the court, however, must be the damages caused the plaintiff by the vexatious suit at hand—i.e., the bringing of the contempt motion. It cannot be the function of this court to make amends through this judgment for every past misdeed and unfair and irresponsible act now alleged against the defendant Spilke. . . . There was much testimony and argument presented about [Spilke's] abandonment of the children, his fraudulent concealment of assets to avoid marital obligations and tax responsibilities, and all of the pain and suffering caused the plaintiff long before the contempt action was brought, let alone contemplated. . . . The plaintiff's basic theory seems to be that the motion [for] contempt was another fraudulent attempt to keep hidden assets concealed, since, if a deficiency judgment were allowed those assets would be discovered. Default has entered,

so the court accepts this allegation made in the complaint as true. But on the separate question of damages emanating from this contempt action the court cannot piggyback on this claim all the deleterious effects of similarly fraudulent activities perpetrated by Mr. Spilke in the past; those effects long antedated the contempt litigation."

"Proximate cause is ordinarily a question of fact. . . . To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . ." (Citation omitted; internal quotation marks omitted.) *Gurguis* v. *Frankel*, 93 Conn. App. 162, 168, 888 A.2d 1083, cert. denied, 277 Conn. 916, 895 A.2d 789 (2006).

We conclude that the court did not err in limiting the vexatious litigation claim and the resulting damages the plaintiff suffered from the time of the filing of the motion for contempt onward. A vexatious litigation claim arises when a plaintiff has wrongfully been sued by another individual. *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, supra, 286 Conn. 553. An individual is entitled to recover damages that resulted from the unlawful lawsuit. Id., 554. In the present case, the wrongful lawsuit at issue was the filing of the motion for contempt. Although the divorce between the plaintiff and Spilke may have been acrimonious, the plaintiff's vexatious litigation claim stems from the filing of the motion of contempt, and not from the divorce proceedings. The alleged concealment of assets and fraudulent financial affidavits happened prior to the filing of the motion for contempt and are not relevant to the plaintiff's damages for her vexatious litigation claim. Although the plaintiff asserts that all of the proceedings between the parties, including the divorce itself, were vexatious, the complaint asserts a claim for

vexatious litigation based on the filing of the motion for contempt, and the court therefore properly limited its review to damages arising out of the filing of the motion for contempt in October, 2004. We therefore conclude that the court did not err in limiting the proximate cause for the vexatious litigation claim to the filing of the motion for contempt.

## C

The plaintiff's last claim is that the court erred in not assessing damages against Ballard, and also in not awarding the plaintiff "for all [of] the maltreatment" she suffered over the extensive period of litigation. On his cross appeal, Spilke contends that the court erred in finding that the plaintiff had proven emotional distress and in awarding $10,001 in damages. Because both the plaintiff and Spilke contend that the court's award for damages was improper, we analyze these claims together.

A trial court is vested with "broad discretion in determining whether damages are appropriate. . . . Its decision will not be disturbed . . . absent a clear abuse of discretion." (Citation omitted; internal quotation marks omitted.) *Elm City Cheese Co.* v. *Federico*, 251 Conn. 59, 90, 752 A.2d 1037 (1999).

Because we already have determined that the court did not err in concluding that Ballard did not participate in the filing of the motion for contempt, we conclude that the court did not abuse its discretion in awarding only nominal damages as to Ballard. The plaintiff, however, also claims that the court erred in not assessing a greater damages award for all of the "maltreatment" that she suffered. As indicated in part I B of this opinion, the court correctly limited its focus as to what occurred after the filing of the motion for contempt. The plaintiff's vexatious litigation claim stemmed from the motion for contempt, and, therefore, the court properly

limited its damages award to only damages that resulted from the filing of the motion. We therefore must determine whether the court abused its discretion in awarding $10,001 in damages against Spilke on the plaintiff's vexatious litigation claim.

The court found that the plaintiff was entitled to $10,001 in noneconomic damages for emotional distress and was entitled to treble damages.[4] The court took the allegations of the complaint as true and found that the plaintiff "was threatened with contempt for violating a paragraph of a settlement agreement entered into by the parties just two years before and according to the complaint was instituted solely to hide fraudulently concealed assets, which, although apparently known about by her, was not further pursued because she wanted to settle the case and apparently move on with her life. One can imagine her aggravation and distress in being accused of violating a provision of an agreement she entered into despite her belief that the defendant had acted in the improper way alleged in concealing and transferring his assets. This litigation, even if it need not have prevented [the plaintiff] from moving to Chicago to be with her mother, complicated the decision whether or not to do so and must have been a source of emotional distress. She also must have experienced distress proceeding from her annoyance in having to spend

---

[4] General Statutes § 52-568 provides: "Any person who commences and prosecutes any civil action or complaint against another, in his own name or the name of others, or asserts a defense to any civil action or complaint commenced and prosecuted by another (1) without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other person, shall pay him treble damages." We note that Spilke only claims on appeal that the plaintiff did not prove her damages for emotional distress and therefore that the court erred in awarding $10,001. Spilke does not argue that the court erred in awarding treble damages under § 52-568; therefore, we limit our analysis as to whether the court abused its discretion in awarding $10,001 in damages for emotional distress.

eighty to 100 hours to prepare for what was knowingly bogus litigation."

Giving every reasonable presumption in favor of the correctness of the court's ruling, we conclude that the trial court did not abuse its discretion when it awarded the plaintiff $1 in nominal damages and $10,001 in non-economic damages for her emotional distress. The plaintiff testified that she was prevented from going to live with her mother in Chicago due to the filing of the motion for contempt. The plaintiff testified that she was planning to move to Chicago to be with her ailing mother and to move closer to her friends and family. She testified that during the planning of this move, however, Spilke filed the motion for contempt, which forced her to stay in Connecticut. Although she may have been able to move and still defend herself in the motion for contempt, she thought that the better decision for the purpose of defending herself as to the motion for contempt was to remain in Connecticut, which prevented her from taking care of her mother and from reuniting with her children and friends in Chicago. The court properly could infer that this decision likely caused the plaintiff some distress.

Spilke argues that the plaintiff provided no evidence to the court regarding her emotional distress and that her testimony referenced events that occurred prior to the filing of the motion for contempt. While it is true that the plaintiff often testified in generalities, referencing what in her opinion were all of the atrocities that Spilke had committed against her without specific regard to the motion for contempt, we find that the court could have inferred that the plaintiff suffered emotional distress from the filing of the motion for contempt.[5] The plaintiff testified regarding the distress

---

[5] We also note that the plaintiff represented herself during the hearing in damages as well as in the present appeal. "Connecticut courts are solicitous of self-represented parties when it does not interfere with the rights of other parties." *Argentinis* v. *Fortuna*, 134 Conn. App. 538, 539, 39 A.3d 1207 (2012).

of the divorce proceedings, the aftermath of the divorce and her belief that Spilke had perpetrated fraud against her at the time of the divorce. It is clear from the record that the plaintiff had endured a contentious divorce with Spilke and that after the divorce was finalized, she was served with a motion for contempt, resulting in even more time in litigation with Spilke. She testified that "in terms of . . . emotional distress, you could see that previously . . . I was really quite upset. It is that it can never—it's never really straightened out." Furthermore, the plaintiff testified that, after the divorce from Spilke, "I felt like a burdened beast, insulted by this former husband . . . who has said some horrible things about me to the children; at the end of all this I had at least an opportunity to spring to life and then [Spilke] brought postjudgment action against me without any evidence that I participated in anything unlawful." We therefore conclude that the court did not abuse its discretion in finding that the plaintiff suffered emotional distress and awarding $10,001 in compensatory damages. As for the plaintiff's claim, she has provided no reason why the court abused its discretion in awarding only $10,001 in compensatory damages other than her own belief that she is entitled to more damages. We find that the award was not unreasonable and conclude that the court did not abuse its discretion in its award of damages as to Spilke.

II

## DEFENDANTS' CROSS APPEALS

We next address the remainder of the defendants' claims raised in their cross appeals. The defendants claim that the court erred in denying their motion to strike the case from the hearing in damages list when the plaintiff had repleaded her complaint. They argue that the plaintiff filed an amended complaint on July

28, 2008, well after default was entered as to the defendants, and that no new motion for default was filed by the plaintiff. The defendants argue, therefore, that the amended complaint extinguished their default. Furthermore, the defendants claim that the court abused its discretion in failing to open the default judgment entered against them.

The complaint originally was brought against the two defendants as well as Spilke's attorney, Joseph M. Wicklow III, and the law firm of Lasala, Walsh, Wicklow & Velardi, LLC (law firm). Wicklow and the law firm filed a motion to strike count one and count two of the plaintiff's complaint, which was granted by the court on July 11, 2008. The plaintiff filed an amended complaint on July 25, 2008, including counts against Wicklow and the law firm. Wicklow and the law firm filed a motion to strike the counts of the complaint directed against them, which was granted by the court on October 2, 2008.

On April 12, 2010, the plaintiff filed a certificate of closed pleadings and requested a hearing in damages. The defendants filed a motion to strike the matter from the hearing in damages docket on September 16, 2010, arguing that the plaintiff had amended her complaint numerous times since the entry of default against the defendants, which, in turn, extinguished the default. They also filed an answer to the plaintiff's complaint, pending the court's decision on the motion. The court denied the motion on September 16, 2010.

The court's order denying the defendants' motion to strike stated: "The defendants . . . move to strike this case from the hearing in damages list, to which it was assigned following the entry of a default for failure to plead. They rely on the fact that following the granting of a motion to strike the complaint as to the other defendants in this case, the plaintiff filed a substitute

pleading in an effort to cure the defects that the court had found in the stricken pleading. . . . They have filed an answer and special defenses, and they seek to have the case removed from the hearing in damages docket so that it can be claimed for a trial on the merits. The problem with the defendants' argument is that the plaintiff, in the previously mentioned substituted complaint, makes it abundantly clear that the substitution relates only to the former defendants Joseph Wicklow III and Walsh, Lasala, Wicklow and Velardi, LLC, and that it does not seek to be a substitute for the original counts against the defendants Kenneth Spilke and Jennifer Ballard. In light of the foregoing, the default against Kenneth Spilke and Jennifer Ballard still stands, and the case is appropriately docketed on the hearing in damages list."

The defendants then filed a motion to open the default for failure to plead on October 18, 2010. In the motion, the defendants argued that the default was due to miscommunication between the defendants and their attorney as well as their attorney's chronic illness. Attached to the motion was an affidavit from the defendants' attorney, Henry N. Silverman. The defendants also argued that there was no prejudice to the plaintiff because the default was pending for three years before the plaintiff claimed the matter to the hearing in damages docket.

The motion was denied by the court on December 23, 2010. In denying the defendants' motion, the court noted that "[t]he gravamen of the defendants' argument in support of the instant motion is that they were prevented by a combination [of] their misunderstanding of the status of the case and prior defense counsel's health problems from responding to the plaintiff's complaint." The court stated that, although the defendants had apprised it that their attorney had health issues in late 2009, that "does not answer, or even address, the

question of how or why defaults which entered in March, 2007, were permitted to stand unchallenged for more than three years. The only explanation given, essentially that [the defendants] had instructed [their counsel] to try to handle their case 'on the cheap' . . . is hardly 'good cause' for allowing three years . . . or even the first two of those years, before [the defendants' attorney's] health problems created additional problems . . . to pass without taking any action with respect to the defaults." The court therefore determined that there was no good cause to set aside the default and denied the defendants' motion.

As for the defendants' first claim, even though the defendants' motion was labeled a motion to strike, "a motion is to be decided on the basis of the substance of the relief sought rather than on the form or the label affixed to the motion. . . . It is the substance of a motion, therefore, that governs its outcome, rather than how it is characterized in the title given to it by the movant." (Citations omitted.) *State* v. *Taylor*, 91 Conn. App. 788, 791–92, 882 A.2d 682, cert. denied, 276 Conn. 928, 889 A.2d 819 (2005). The defendants labeled the motion as one to strike the matter from the hearing in damages docket. The stated reason for the motion was that, because the plaintiff had filed amended complaints, the defendants' default had been extinguished. Essentially, the defendants sought to set aside the default because the plaintiff had filed an amended complaint. We therefore apply the same standard of review to the defendants' claim as we would to a motion to set aside a default, namely, we must determine if the trial court abused its discretion. See *Higgins* v. *Karp*, 243 Conn. 495, 508, 706 A.2d 1 (1998).

Although not completely analogous, we find this court's recent decision in *Willamette Management Associates, Inc.* v. *Palczynski*, 134 Conn. App. 58, 38

A.3d 1212 (2012), instructive. In *Willamette Management Associates, Inc.*, the plaintiff served a complaint on May 28, 2008, that included an erroneous return date. Id., 62–63. In June and July, 2008, the court granted the plaintiff's motions for default against the defendant for failure to appear and failure to plead to the complaint. Id., 62. In October, 2008, the defendant filed an answer, special defenses and counterclaim. Id. In April, 2009, the error in the return date was discovered, and the court ruled that it was a defect that was curable by amendment, and, at the court's direction, the plaintiff amended the writ of summons and served an amended complaint to reflect the correct return date. Id., 63. At the scheduled hearing in damages in August, 2009, the defendant moved to strike the matter from the hearing in damages list, claiming that the plaintiff had not filed a reply to the special defenses asserted by the defendant, and, therefore, the pleadings were still open. Id., 64. The trial court rejected the defendant's argument. Id.

On appeal, the defendant argued that "because the court granted the plaintiff leave to amend the writ of summons and complaint to correct the return date, [the defendant] should have been allowed to plead to the amended complaint." Id., 65. The defendant argued that, due to the filing of the amended complaint, "the default was in effect opened and she should have been allowed to plead to the newly filed amended complaint." Id., 66–67. This court determined that the trial court did not abuse its discretion in prohibiting the defendant from filing a pleading as to the amended complaint. Id., 69. In reaching that conclusion, this court noted that the "only change between the original complaint and the amended complaint was the return date and the date of the complaint. All substantive allegations in the complaint remained precisely the same. . . . The defendant's substantive rights were not affected by the amendment, and she has not demonstrated prejudice.

If the effect of an amendment of a complaint so made is to substantially change the cause of action originally stated, the defendant is entitled to file new or amended pleadings and present further evidence. Also, if the amendment interjects material new issues, the adversary is entitled to reasonable opportunity to meet them by pleading and proof." (Internal quotation marks omitted.) Id., 68–69. This court determined that no substantial change was made to the action, and, therefore, the trial court did not abuse its discretion by prohibiting the defendant from filing pleadings as to the amended complaint. Id., 69.

Although the question in *Willamette Management Associates, Inc.*, was whether the court abused its discretion by prohibiting the defendant from filing pleadings, and in this case it is whether the court abused its discretion in denying the motion to strike the matter from the hearing in damages list, in both cases the question primarily was whether the filing of an amended complaint after a finding of default extinguished the default and allowed the defendant to plead in response. In the present case, the plaintiff filed four amended complaints after the defendants were defaulted. Three of those amended complaints were filed after Wicklow and the law firm filed requests to revise. Although the complaints differed in some respects from the original complaint, the substantive allegations remained the same. As in *Willamette Management Associates, Inc.*, we conclude that the amendments worked no substantial change in the cause of action and that the defendants have not demonstrated any prejudice suffered. Further, we note that the defendants did not file their motion to strike until September 16, 2010, more than three years after the defendants had been defaulted. We therefore conclude that the court did not abuse its discretion in denying the motion to strike the matter from the hearing in damages list.

The defendants also claim that the court abused its discretion in failing to set aside the default judgment.[6] "[T]he determination of whether to set aside [a] default is within the discretion of the trial court . . . and will not be disturbed unless that discretion has been abused or where injustice will result. In the exercise of its discretion, the trial court may consider not only the presence of mistake, accident, inadvertence, misfortune or other reasonable cause . . . factors such as [t]he seriousness of the default, its duration, the reasons for it and the degree of contumacy involved . . . but also, the totality of the circumstances, including whether the delay has caused prejudice to the nondefaulting party." (Citations omitted; internal quotation marks omitted.) *Higgins* v. *Karp*, supra, 243 Conn. 508.

The defendants argue that the motion to set aside the default should have been granted because the default was entered due to "prior counsel's inadvertence and subsequent health issues." The affidavit from the defendants' prior counsel, which was attached to the motion, stated that the defendants "had a misunderstanding as to the nature of this lawsuit, they had it confused with other legal proceedings" and that the

---

[6] The defendants also claim that the court abused its discretion because its decision was based on a misapprehension that the defendants wanted the case handled "on the cheap," when they never instructed counsel not to defend the lawsuit or to compromise their defense in order to save money. In the court's decision on the motion, the court stated that "[t]he only explanation given, essentially that [the defendants] had instructed [their counsel] to try to handle their case 'on the cheap' . . . is hardly 'good cause' for allowing three years . . . or even the first two of those years, before [the defendants' attorney's] health problems created additional problems . . . to pass without taking any action with respect to the defaults." We do not believe that the court misapprehended the affidavit attached to the motion, which explicitly stated that counsel was instructed by the defendants that "they would appreciate it if I would keep the expense of this lawsuit to a minimal amount in order to mitigate the amount of legal fees as it was their hope that the Plaintiff . . . would abandon what they considered to be a malicious lawsuit . . . ."

defendants instructed him that "they would appreciate it if I would keep the expense of this lawsuit to a minimal amount in order to mitigate the amount of legal fees . . . ." The affidavit also mentioned that counsel endured health problems in late 2009 and early 2010, and therefore was unable to handle claims relating to this case.

Given the assertions in the affidavit, we cannot conclude that the court abused its discretion in denying the motion to set aside the default judgment. Counsel's health problems did not begin until nearly two years after the default was entered against the defendants. We also note that the default had been entered more than three years prior to the motion to set aside the default. On the basis of the foregoing, we conclude that the court did not abuse its discretion in denying the motion to set aside the default judgment.

The judgment is affirmed.

In this opinion the other judges concurred.