******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# BIRCH GROVES ASSOCIATION, INC. *v.*
# KATHLEEN CASEY JORDON
## (AC 47213)

Cradle, C. J., and Elgo and Suarez, Js.

### *Syllabus*

The defendant property owner appealed from the trial court's judgments of foreclosure by sale rendered for the plaintiff homeowners association in its action to foreclose water liens on two of the defendant's properties located within the community served by the plaintiff. The defendant claimed, inter alia, that the court abused its discretion by not vacating her default for failure to plead. *Held*:

The trial court correctly determined that the plaintiff's amended complaint, which was filed after the defendant had been defaulted and which sought to foreclose on an additional three years' worth of unpaid water liens, did not make any substantial changes to the cause of action or interject new material issues into the case and, therefore, did not extinguish the defendant's default.

The trial court did not abuse its discretion by not setting aside the default for good cause shown pursuant to the rule of practice (§ 17-42) because, even if the defendant were correct that her delay in pleading did not cause prejudice to the plaintiff, her motion did not allege any facts demonstrating that good cause existed to set aside the default that she failed to address for nearly three years.

This court declined to review the defendant's inadequately briefed claim that the trial court improperly relied on the plaintiff's affidavit of debt in rendering the foreclosure judgments.

Argued March 17—officially released July 1, 2025

### *Procedural History*

Action to foreclose water liens on certain real property owned by the defendant, and for other relief, brought to the Superior Court in the judicial district of Danbury, where the defendant was defaulted for failure to plead; thereafter, the court, *Fox, J.*, denied the defendant's motion to set aside the default and rendered judgments of foreclosure by sale, from which the defendant appealed to this court. *Affirmed*.

*Christopher G. Winans*, for the appellant (defendant).

*John J. Bowser*, for the appellee (plaintiff).

*Opinion*

CRADLE, C. J. The defendant, Kathleen Casey Jordon, also known as Kathleen C. Jordan, appeals from the judgments of foreclosure by sale rendered in favor of the plaintiff, Birch Groves Association, Inc. On appeal, the defendant claims that the court (1) abused its discretion by not vacating her default for failure to plead, and (2) erred in rendering judgments on the basis of the plaintiff's affidavit of debt when the debt was disputed by the defendant. We affirm the judgments of the trial court and remand the case for the purpose of setting new sale dates.

The following undisputed facts and procedural history are relevant to this appeal. The plaintiff is a homeowners association that provides services, including the maintenance of the community water system, to properties within the Birch Groves community in New Milford. The defendant owns two parcels of real property, 7 Juniper Lane and 15 Juniper Lane, which are each located within that community and, thus, receive water from the water system maintained by the plaintiff.

In March, 2020, the plaintiff brought this action against the defendant, alleging that she had failed to pay the annual water use fee levied against each of her properties in 2018 and 2019. In a two count complaint, the plaintiff sought to foreclose several water liens on the defendant's properties resulting from the unpaid fees.[1] On October 23, 2020, the plaintiff filed a request

---

[1] In count one of the complaint, the plaintiff sought to foreclose water liens on the 7 Juniper Road property, and, in count two, it sought to foreclose water liens on the 15 Juniper Road property. The two counts, including the material allegations against the defendant and the amount of unpaid water charges with respect to each property, were otherwise identical.

to amend its complaint. In the proposed amended complaint, the plaintiff alleged that the defendant had again failed to pay the annual water charge levied against each property in 2020 and sought to recover those unpaid fees as well. The defendant did not object.[2] Thereafter, on February 16, 2021, the plaintiff filed a demand for disclosure of defense. On April 1, 2021, the defendant filed a disclosure of defense, asserting, inter alia, that "[t]he plaintiff's bills for water are arbitrary and capricious insofar as the defendant is not a member of the plaintiff."[3]

The defendant, however, failed to file an answer either to the original complaint or the amended complaint, and, on April 20, 2021, the plaintiff filed a motion for default for failure to plead. On April 28, 2021, the plaintiff's motion was granted, and a default was entered against the defendant. Despite the protracted settlement discussions that followed, the parties were unable to reach an agreement, and, on February 14, 2023, the plaintiff moved for a judgment of foreclosure by sale.

Thereafter, on October 6, 2023, the court, *Shaban, J.*, issued a notice to the parties scheduling a hearing for November 13, 2023, to address the dormancy status of the case. In advance of that hearing, the plaintiff, on October 12, 2023, filed another request to amend its complaint (2023 amendment). Specifically, the plaintiff sought to foreclose on an additional three years' worth of water liens on each property resulting from the defendant's failure to pay her annual water use fees in 2021,

---

[2] Because the defendant did not object to the proposed amended complaint within fifteen days, the amendment was deemed to have been filed by the consent of the defendant. See Practice Book § 10-60 (a) (3).

[3] The plaintiff also had filed a motion for default for failure to disclose defense on March 18, 2021. Following the defendant's April 1, 2021 disclosure of defense, the court, *Kowalski, J.*, denied the plaintiff's motion on April 5, 2021.

2022, and 2023. The defendant again did not oppose the plaintiff's amendment.[4] On November 8, 2023, the defendant filed an answer to the 2023 amendment, in which she denied the material allegations against her and asserted as a special defense that the plaintiff's water charges had been imposed in an "arbitrary and capricious manner."[5]

Following the November 13, 2023 dormancy status conference, a hearing on the plaintiff's motion for judgment was scheduled for December 18, 2023.[6] In advance of that hearing, the plaintiff filed an affidavit of debt on November 30, 2023. On December 15, 2023, three days before the scheduled hearing, the defendant filed a motion to set aside the default for failure to plead.[7]

On December 18, 2023, after hearing argument by both parties, the court, *Fox, J.*, issued an oral ruling denying the defendant's motion to set aside the default and granting the plaintiff's motion for judgment. On the same date, the court rendered separate judgments of foreclosure by sale as to each of the defendant's properties.[8] In rendering the judgments, the court, relying on the plaintiff's affidavit of debt, found that the defendant owed the plaintiff $4157.32 in unpaid water charges, plus interest and fees, with respect to each property,

[4] See footnote 2 of this opinion.

[5] In addition, the defendant (1) claimed a setoff, alleging that she had "made a payment of $1000," and (2) filed a counterclaim sounding in trespass, alleging that "[t]he plaintiff repeatedly flushes and discharges its water hydrants" onto her property without permission.

[6] The hearing on the plaintiff's motion for judgment of foreclosure originally was scheduled for December 4, 2023. On that date, the court issued notice to the parties that the hearing was continued to December 18, 2023.

[7] The defendant also filed on the same date an objection to the plaintiff's motion for judgment of foreclosure by sale "for the reasons noted in [the defendant's] motion to set aside default . . . ."

[8] The court indicated at the December 18, 2023 hearing that it was considering rendering two separate judgments because "the underlying complaint involve[d] two pieces of property." Neither party's counsel objected.

and set a sale date of April 6, 2024, for both properties.[9] This appeal followed.

I

The defendant first claims that the court abused its discretion by not vacating the default for failure to plead. Specifically, the defendant argues that the filing of the 2023 amendment effectively extinguished the default pursuant to this court's decision in *Chase Home Finance, LLC* v. *Scroggin*, 178 Conn. App. 727, 176 A.3d 1210 (2017). In the alternative, the defendant argues that the court abused its discretion in not setting aside the default for good cause shown.

Before addressing the merits of the defendant's arguments, we set forth our standard of review and the legal principles relevant to her claim. "[T]he effect of a default is to preclude the defendant from making any further defense in the case so far as liability is concerned . . . ." Practice Book § 17-33 (b). When a party is in default for failure to plead, "the judicial authority, at or after the time it renders the default . . . [also] may . . . render judgment in foreclosure cases . . . provided the plaintiff has also made a motion for judgment and provided further that any necessary affidavits of debt or accounts or statements . . . are submitted to the judicial authority." Practice Book § 17-33 (b). If a motion for judgment already has been filed by the plaintiff at the time the defaulted party files her answer, as was the case here, "the default may be set aside only by the judicial authority."[10] Practice Book § 17-32 (b).

_____

[9] On December 19, 2023, the court issued corrected judgments "to update the committee [of sale]" because "[t]he prior committee had a conflict of interest."

[10] Conversely, had the defendant filed her answer prior to the plaintiff's filing of the motion for judgment, the default would have been set aside automatically by operation of law. See Practice Book § 17-32 (b). In this case, however, it is undisputed that the defendant's answer was filed subsequent to the plaintiff's motion for judgment.

"The abuse of discretion standard of review applies to a court's ruling on a motion to set aside a default . . . . [A] foreclosure action constitutes an equitable proceeding. . . . In an equitable proceeding, the trial court may examine all relevant factors to ensure that complete justice is done. . . . The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. . . . This court must make every reasonable presumption in favor of the trial court's decision when reviewing a claim of abuse of discretion. . . . Our review of the trial court's exercise of legal discretion is limited to the question of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Citations omitted; internal quotation marks omitted.) *Chase Home Finance, LLC* v. *Scroggin*, supra, 178 Conn. App. 739.

A

The defendant first claims that the court abused its discretion by not setting aside the default because, she argues, the court incorrectly concluded that the 2023 amendment did not allege new material facts and, therefore, had not extinguished the default.

In support of this contention, she relies on *Chase Home Finance, LLC* v. *Scroggin*, supra, 178 Conn. App. 727, in which this court concluded that the plaintiff's filing of an amended complaint effectively extinguished the defendant's default for failure to plead to the original complaint. Id., 745. In *Scroggin*, the plaintiff commenced a foreclosure action against the defendant by way of a one count complaint in December, 2009. Id., 730. After the defendant was defaulted for failure to plead in June, 2010, the plaintiff filed an amended complaint, which contained, inter alia, two additional

counts directed at the defendant.[11] Id., 731–34. Five years later, on November 24, 2015, the plaintiff moved for a judgment of strict foreclosure with respect to the amended complaint. Id., 734. On April 4, 2016, the defendant filed an answer to the amended complaint and an objection to the 2015 motion for judgment. Id. This court in *Scroggin* noted that "[t]he [trial] court, however, indicated that it would not give any effect to the [answer] filed by the defendant to the . . . amended [complaint] . . . on the ground that [the filing was] untimely, having been presented to the court more than five years following the default. The [trial] court observed, as well, that in the lengthy period of time that ensued following the default, the defendant did not move to set aside that default." Id., 738. Accordingly, the trial court granted the plaintiff's motion for judgment of strict foreclosure. Id., 737.

On appeal to this court, "[t]he defendant argue[d] that, in fairness to him, the default should have been extinguished by the filing of the amended complaint and that the court should have given effect to his answer . . . ." Id., 737–38. This court agreed, concluding that the amended complaint substantially changed the pleadings and, therefore, effectively extinguished the defendant's default for failure to plead in response to the original complaint. Id., 743–44. Specifically, "[t]he original [one count] complaint, sounding in foreclosure, invoked the [trial] court's equitable powers. [In contrast] [c]ount five of the amended complaint sounded in unjust enrichment and count six accused the defendant of engaging in fraudulent conduct. The amended

---

[11] The amended complaint in *Scroggin* contained six counts. Count one "generally was consistent with the allegations brought against the defendant in the original one count complaint," counts two through four were directed at an additional defendant that was not named as a party in the original complaint, and counts five and six set forth new claims against the original defendant. *Chase Home Finance, LLC* v. *Scroggin*, supra, 178 Conn. App. 731–34.

complaint . . . interjected new material factual allegations and new legal theories on which the plaintiff relied. . . . [T]hus, the amended complaint materially altered the nature of the claims against the defendant." Id., 744. "In light of the changes to the plaintiff's case that were reflected in the amended complaint," this court held that "it was inequitable for the [trial] court not to have considered the default entered in 2010 to have been extinguished. . . . Although it was appropriate for the court to have considered the lengthy period of time that followed the entry of the default, it nonetheless abused its discretion by failing to consider the effect of the amended complaint upon that default." (Footnote omitted.) Id., 745.

In the present case, the defendant argued in her motion to set aside the default that the additional three years' worth of water liens that were referenced in the 2023 amendment "drastically increased the amount of damages," thereby constituting "a substantial change" from the original complaint and interjecting new material issues into the case. The court rejected the defendant's argument, finding that "[t]he [2023 amendment] does not reflect a substantial change to the pleadings in effect at the time that the default was entered" and, therefore, that "[t]he [2023] amendment does not interject material new issues." (Internal quotation marks omitted.)

On appeal, the defendant claims that "[t]he court's interpretation of the amended complaint is simply wrong and is an abuse of its discretion." In support of her claim, she essentially reiterates her argument that the 2023 amendment interjected a "quantifiably new material issue" into the present case because the increase in the amount of damages alleged constituted an "obvious and substantial change [to] the nature of the claim" against her. We disagree.

"[I]n determining whether the filing of an amended complaint following a finding of default effectively extinguished the default and afforded a defendant an opportunity to plead in response, the dispositive inquiry is whether the amendment reflected a substantial change to the pleadings in effect at the time that the default was entered. . . . [A] primary consideration in this inquiry [is] whether the amendment interjected material new issues in the case." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Chase Home Finance, LLC* v. *Scroggin,* supra, 178 Conn. App. 742. "If the effect of an amendment of a complaint . . . is to substantially change the cause of action originally stated, the defendant is entitled to file new or amended pleadings and present further evidence. Also, if the amendment interjects material new issues, the adversary is entitled to reasonable opportunity to meet them by pleading and proof." (Internal quotation marks omitted.) Id., 745; see also, e.g., *Spilke* v. *Wicklow,* 138 Conn. App. 251, 270, 53 A.3d 245 (2012) (filing of four amended complaints did not extinguish default where, "[a]lthough the complaints differed in some respects from the original complaint, the substantive allegations remained the same"), cert. denied, 307 Conn. 945, 60 A.3d 737 (2013); *Willamette Management Associates, Inc.* v. *Palczynski,* 134 Conn. App. 58, 68, 38 A.3d 1212 (2012) (filing of amended complaint for sole purpose of "remedy[ing] a typographical error" did not extinguish default).

"Although we have characterized our general inquiry in these types of cases as a review of the trial court's exercise of discretion . . . [t]he interpretation of pleadings is always a question [of law] for the court . . . . Our review of a trial court's interpretation of the pleadings therefore is plenary." (Citation omitted; internal quotation marks omitted.) *Chase Home Finance,*

*LLC* v. *Scroggin*, supra, 178 Conn. App. 743. "The modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . Although essential allegations may not be supplied by conjecture or remote implication . . . the complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties." (Internal quotation marks omitted.) Id.

We do not find persuasive the defendant's assertion that the 2023 amendment constituted a substantial change from the allegations set forth in the original complaint. The only change to the pleadings pursuant to the 2023 amendment was the inclusion of an additional three years' worth of claimed water liens. In seeking to foreclose on those additional liens, the plaintiff did not interject new material factual allegations apart from the years of the liens, and it did not rely on any new legal theories. The substantive allegations against the defendant, namely, that she had failed to pay the plaintiff's properly levied water charges, remained the same. The 2023 amendment merely reflected the fact that water charges continued to accrue while the litigation was pending and the defendant failed to pay them.[12] Thus, there was no substantial change to the cause of action in the present case.

Nonetheless, the defendant argues that the quantitative increase in damages reflected by the 2023 amendment constitutes a new material issue under *Scroggin*.[13]

---

[12] The defendant concedes that she remained in possession of both Juniper Road properties and, thus, presumably, continued to receive water from the community water system, throughout the pendency of the litigation.

[13] We note that, in her brief to this court, the defendant claims, inconsistently, that the 2023 amendment "triple[d] the water charges being claimed" and "quadrupl[ed] . . . the plaintiff's debt claim." Neither assertion is supported by the record. In the operative pleadings at the time default was entered, the plaintiff alleged unpaid water fees in the total amount of $5178.64. In its 2023 amendment, the plaintiff alleged additional unpaid water fees in the total amount of $3856.

We disagree. In *Scroggin*, the plaintiff sought additional monetary damages pursuant to the two new claims against the defendant in its amended complaint; however, this court's analysis of whether the amendment interjected new material issues focused only on *the nature* of those claims and *the legal theories* on which the plaintiff relied in claiming those additional damages. See *Chase Home Finance, LLC* v. *Scroggin*, supra, 178 Conn. App. 743–44. Nothing in this court's analysis indicates that it attached any significance to the difference in the *amount* of damages claimed in each complaint. The defendant does not cite, nor could we find any, authority to support her contention that an increase in the amount of damages claimed by the plaintiff, in and of itself, constitutes a new material issue, particularly when, as here, the allegations giving rise to the additional damages are substantively identical to those set forth in the original complaint. Accordingly, we conclude that the court correctly determined that the 2023 amendment did not interject new material issues into the case and, therefore, did not extinguish the defendant's default.

B

Alternatively, the defendant claims that, even if the 2023 amendment did not extinguish the default, the court abused its discretion by not setting aside the default for good cause shown pursuant to Practice Book § 17-42.

Practice Book § 17-42 provides in relevant part: "A motion to set aside a default where no judgment has been rendered may be granted by the judicial authority for good cause shown upon such terms as it may impose. . . ." It is well established that "[the] determination of whether to set aside [a] default is within the discretion of the trial court . . . [and] such a determination will not be disturbed unless that discretion has

been abused or where injustice will result." (Internal quotation marks omitted.) *Johnson* v. *Raffy's Café I, LLC*, 173 Conn. App. 193, 203, 163 A.3d 672 (2017). "In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *Sessa* v. *Province*, 98 Conn. App. 564, 566, 910 A.2d 992 (2006), cert. denied, 281 Conn. 912, 916 A.2d 51 (2007). "In the exercise of its discretion, the trial court may consider not only the presence of mistake, accident, inadvertence, misfortune or other reasonable cause . . . factors such as [t]he seriousness of the default, its duration, the reasons for it and the degree of contumacy involved . . . but also, the totality of the circumstances, including whether the delay has caused prejudice to the non-defaulting party." (Internal quotation marks omitted.) *Johnson* v. *Raffy's Café I, LLC*, supra, 203.

As we previously stated, in her motion to set aside the default, the defendant took the position that the default had been effectively extinguished by the filing of the 2023 amendment. She argued in the alternative, however, that, if the court were to conclude otherwise, it nonetheless should set aside the default for good cause shown. In arguing that good cause existed, the defendant asserted in her motion only that the plaintiff was not prejudiced by her delay in pleading because the plaintiff could have moved for judgment "in 2021 or 2022 . . . but chose not to." The court, in denying the defendant's motion, made no express findings with respect to the defendant's alternative argument.

On appeal, the defendant claims that the court abused its discretion in failing to set aside the default pursuant to Practice Book § 17-42 because, she argues, "it should have been clear" to the court that the "circumstances

. . . warranted the opening of the default" for good cause shown. In asserting that good cause existed to set aside the default, the defendant reiterates on appeal her argument before the trial court that the plaintiff was not prejudiced by the delay in pleading.[14] We are not persuaded.

[14] The defendant also argues in her appellate brief that good cause existed to set aside the default because "there [was] no contumacy on the defendant's part . . . she simply wanted to get the backup for the charges," which we interpret as an argument that she delayed responding to the plaintiff's complaint only because she was waiting on documentation to substantiate the water charges. The defendant's counsel, however, did not raise such an argument either in the defendant's motion to set aside the default or during oral argument before the trial court. Rather, the defendant's counsel appeared to take an entirely different position during argument before the trial court, as he suggested that the delay was because the defendant did not feel that the damages sought by the plaintiff prior to the 2023 amendment were worth litigating. Thus, the trial court was not apprised of the defendant's position, raised for the first time on appeal, that the reason for the delay was due to the plaintiff's alleged failure to provide her with supporting documentation for its water charges, and the plaintiff was not given the opportunity to respond to this argument before the trial court. See *Duso* v. *Groton*, 228 Conn. App. 390, 419–20, 325 A.3d 295 ("to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party" (internal quotation marks omitted)), cert. granted, 350 Conn. 933, 327 A.3d 385 (2024). Moreover, apart from the defendant's unsupported assertion in her special defense that she made "numerous demands" for written documentation, the record is devoid of any evidence demonstrating that she actually made such a request or that she ever indicated to the plaintiff or the court that such documentation was necessary for her to respond to the pleadings. Because we are in no position to assess the defendant's factual assertions when there is no evidence in the record to support them, we conclude that we cannot address this argument because of an inadequate record. See *Duso* v. *Groton*, supra, 420.

The defendant's appellate brief also asserts, without further explanation, that the circumstances establishing good cause included the fact that she had a pending counterclaim and that new counsel had filed an appearance one week prior. The defendant, however, offers no legal authority for her contention that such factors are controlling to a court's consideration of whether to set aside a default. Moreover, the defendant fails to engage in any substantive analysis regarding how those alleged facts established good cause to set aside the default, which was entered more than two years prior to the filing of both the defendant's counterclaim and her new counsel's

Although the defendant was defaulted for failure to plead in April, 2021, she did not take any action to address that default until December 15, 2023, when she filed a motion to set it aside, just three days before the scheduled hearing on the plaintiff's motion for judgment. The defendant failed to offer any meaningful explanation, either before the trial court or on appeal, regarding her initial failure to plead or why she waited nearly three years after the default was entered to file a motion to set it aside. Accordingly, even assuming the defendant is correct that her delay in pleading did not cause prejudice to the plaintiff,[15] her claim fails simply because her motion did not allege any facts demonstrating that good cause existed to set aside the default that she had failed to address for nearly three years. See, e.g., *U.S. Bank National Assn.* v. *Weinbaum,* 219 Conn. App. 597, 612–13, 295 A.3d 1045 (2023) (court did not abuse its discretion in denying motion to set aside default when defendant "did not provide any meaningful explanation for her failure to plead on time" and therefore failed to demonstrate good cause); *Chevy Chase Bank, F.S.B.* v. *Avidon,* 161 Conn. App. 822, 833–34, 129 A.3d 757 (2015) (defendant failed to demonstrate good cause to open default when defendant's

appearance. "[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required . . . ." (Internal quotation marks omitted.) *MacDermid, Inc.* v. *Leonetti,* 328 Conn. 726, 748, 183 A.3d 611 (2018). Accordingly, we decline to consider these issues in our review of the defendant's claim. See, e.g., *State* v. *Hines,* 165 Conn. App. 1, 23 n.15, 138 A.3d 994 (declining to review defendant's argument where he failed to offer any legal authority to support argument), cert. denied, 321 Conn. 920, 137 A.3d 764 (2016).

[15] The plaintiff contends that it was prejudiced by the delay in pleading in light of "the time, fees, and costs associated" with its "significant efforts to craft a global settlement from the time the default entered . . . until the plaintiff filed its motion for judgment . . . ." During oral argument before this court, however, the plaintiff's counsel acknowledged that, because there was an annual 18 percent statutory interest rate on the unpaid water liens, the defendant's claim that the delay did not prejudice the plaintiff "admittedly . . . might be true . . . ." See General Statutes § 49-72.

counsel "did not provide any explanation for the defendant's initial failure to plead . . . or give a reason as to why [he] waited almost seven months to file a motion to open the default"); *Snowdon* v. *Grillo*, 114 Conn. App. 131, 141–42, 968 A.2d 984 (2009) (court did not abuse its discretion in denying motion to set aside default filed day of hearing in damages, and four months after default was entered, when "[t]he only reason for failing to plead offered by the [defendant] . . . did not rise to the level of good cause"); *Merritt* v. *Fagan*, 78 Conn. App. 590, 595–96, 828 A.2d 685 (court did not abuse its discretion in denying motion to set aside default filed on day of scheduled hearing in damages and four months after default was entered), cert. denied, 266 Conn. 916, 833 A.2d 467 (2003).

The defendant has not provided a meaningful explanation for her initial failure to plead or for the lengthy delay in addressing the default; therefore, she has failed to demonstrate that good cause existed to set aside the default. Accordingly, we conclude that the court did not abuse its discretion in denying the defendant's motion to set aside the default.

## II

The defendant next claims that the trial court improperly relied on the plaintiff's affidavit of debt in rendering the judgments. The defendant argues that because she objected to the amount of debt, the court was precluded from relying on the plaintiff's affidavit pursuant to Practice Book § 23-18 (a).

Practice Book § 23-18 (a) provides in relevant part that, in any foreclosure action, "where no defense as to the amount of the . . . debt is interposed, such debt may be proved by . . . the affidavit of the plaintiff or other person familiar with the indebtedness . . . ." "[Section] 23-18 (a) provides plaintiffs with an efficient method of meeting their burden to establish the amount

of the debt if no defense is interposed. Although it is the defendant's burden to sufficiently interpose a defense to the claimed amount of the debt, once a defense is interposed, the burden remains on the plaintiff to prove the amount of the debt. . . . In other words, once the defendant has sufficiently interposed a defense as to the amount of the debt, the plaintiff is required to satisfy its burden under the Connecticut Code of Evidence, without the benefit of § 23-18 (a)." *JPMorgan Chase Bank, National Assn.* v. *Malick*, 347 Conn. 155, 176, 296 A.3d 157 (2023). "[A] trial court's legal determination of whether . . . § 23-18 (a) applies is a question of law over which our review is plenary." (Internal quotation marks omitted.) Id., 164.

It is well established, however, that a mere pro forma objection to the amount of debt is insufficient to render Practice Book § 23-18 (a) inapplicable. "[T]o preclude the admission of an affidavit of debt pursuant to . . . § 23-18 (a) to establish the amount of . . . debt, a defense to the . . . debt must concern the *amount* of the debt. . . . [Our] case law [makes] clear that a defense challenging the amount of the debt must be actively made to prevent the application of § 23-18 (a). . . . A defense is insufficient if it focuses on matters that are ancillary to the amount of the debt, such as whether the loan is in default, which is a matter of liability, or [matters] that attack the credibility of the affiant or defects in the execution of the affidavit itself. . . . Additionally, a defense to the amount of the debt must be based on some articulated legal reason or fact. . . . A defendant not only must object to the amount of the debt but must specifically object as to why the amount of the debt is incorrect: for example, whether late charges should have been waived or money had been advanced for taxes." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id.,

164–65; see also, e.g., *Bank of America, N.A.* v. *Chai-nani*, 174 Conn. App. 476, 487–88, 166 A.3d 670 (2017) (claim of insufficient knowledge to admit or deny amount of debt, and denial that debt was in default, which went to liability, were not defenses to amount of debt).

On appeal, the defendant argues that she objected to the amount of the debt in her disclosure of defense, special defense, and at the December 18, 2023 hearing. The defendant's argument is belied by the record, which reveals that the defenses she interposed to the debt did not specifically challenge the *amount* of the debt.[16] The alleged objections in her disclosure of defense and special defense were more analogous to claims of insufficient knowledge to admit or deny the amount of debt than specific objections, based on some articulated legal reason or fact, as to why the amount of the debt was incorrect. And, although the defendant's counsel objected to the plaintiff's affidavit of debt at the December 18, 2023 hearing, he merely stated that the defendant "do[es] object to the debt, obviously." The defendant's counsel did not elaborate on his objection or explain why the plaintiff's affidavit was incorrect, and he did

---

[16] In her disclosure of defense, the defendant asserted, inter alia, that the "plaintiff's bills for water are arbitrary and capricious" because she was not a member of the plaintiff and, therefore, "not privy" to how the charges were calculated. Similarly, in her special defense, the defendant asserted that the water charges were "imposed . . . in an arbitrary and capricious manner" on the basis that she "never received written documentation supporting or substantiating the charges."

We note additionally that the defendant's other disclosed defenses challenged the plaintiff's standing to foreclose on the water liens and, in filing her answer and special defense, the defendant denied all liability with respect to the unpaid fees. The defendant's counsel repeatedly represented to the court at the December 18, 2023 hearing that the defendant's disclosed defenses and special defense went to the merits of the case, rather than to the amount of damages. See, e.g., *Busconi* v. *Dighello*, 39 Conn. App. 753, 771–72, 668 A.2d 716 (1995) (defense to liability for debt is not defense to amount), cert. denied, 236 Conn. 903, 670 A.2d 321 (1996).

not request an opportunity to be heard further on the matter.

The defendant, in conclusory fashion, asserts on appeal that those objections precluded the court from relying on the plaintiff's affidavit of debt pursuant to Practice Book § 23-18 (a). The defendant, however, fails to provide any substantive or legal analysis regarding whether those objections were sufficient to render § 23-18 (a) inapplicable under the controlling precedent.[17]

This court "repeatedly ha[s] stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . For a reviewing court to judiciously and efficiently . . . consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs." (Internal quotation marks omitted.) *Ramos* v. *State*, 230 Conn. App. 524, 530, 330 A.3d 278 (2025). Accordingly, we conclude that the defendant's claim is inadequately briefed, and we therefore decline to review it.

The judgments are affirmed and the case is remanded for the purpose of setting new sale dates.

In this opinion the other judges concurred.

---

[17] In addition, the defendant fails to address, let alone adequately brief, whether she could properly challenge the amount of the debt by way of her disclosed defense and special defense, particularly when she was in default for failure to plead and asserted her special defense in an answer that was not timely filed. See *JPMorgan Chase Bank, National Assn.* v. *Malick*, supra, 347 Conn. 170 n.5 (acknowledging this court's holding in *Bank of America, N.A.* v. *Chainani*, supra, 174 Conn. App. 486, that defendant may challenge amount of debt by way of special defense but noting disagreement among trial courts and expressly declining "to address the validity of pleading a special defense related to the amount of mortgage debt owed"); see also, e.g., *Chevy Chase Bank, F.S.B.* v. *Avidon*, supra, 161 Conn. App. 836–37 (holding that trial court, in its discretion, may refuse to give effect to defendant's untimely filed answer and special defenses).